Argued and submitted May 15, temporary rule held invalid May 31, 1989

# WATERWATCH OF OREGON, INC.,
*Petitioner,*

## OREGON TROUT, INC., et al,
*Intervenors,*

*v.*

## OREGON WATER RESOURCES COMMISSION,
*Respondent.*

(WRC OAR 690-80-060; CA A51221)

774 P2d 1118

Intervenors joined in petitioner's brief.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner[1] challenges the validity of the Water Resources Commission's temporary rule amending OAR 690-80-060(5)(c). ORS 183.400. It contends, *inter alia,* that the rule was adopted without sufficient findings of prejudice and without a sufficient statement of need to support the adoption of a temporary rule under ORS 183.335(5)(a) and (c).[2] We hold that the rule is invalid.

In 1962, the commission adopted an order to maintain the flow of the North Fork of the John Day River "above its mouth * * * at Monument" at a minimum of "55 cubic feet per second measured at [the Monument] gauge."[3] That order has the effect of subordinating water rights acquired subsequent to its adoption when necessary to maintain the specified minimum flow. The Monument measuring point is upstream from the mouth of the North Fork. Consequently, the 1962 order was somewhat ambiguous as to whether the rights of junior holders were to be subordinated when the flow anywhere between the measuring point and the mouth was below the minimum or only when the flow at the measuring point was below the specified level. The commission and the watermaster took the former view in a 1977 enforcement action; litigation resulted but was terminated after rainfall restored the level of flow.

In 1987, the commission adopted a comprehensive John Day Basin Program, codified at OAR 690-80-060. Section (5)(c) of the 1987 rule provided:

---

[1] References to petitioner in this opinion include the intervenors, who have appeared only by joining in petitioner's arguments.

[2] ORS 183.335(5) provides, as pertinent:

"Notwithstanding subsections (1) and (4) of this section, an agency may adopt, amend or suspend a rule without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, if the agency prepares:

"(a) A statement of its findings that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned and the specific reasons for its findings of prejudice;

"* * * * *

"(c) A statement of the need for the rule and a statement of how the rule is intended to meet the need * * *."

[3] The 1962 order also established minimum flows for waterways other than the North Fork.

"For those streams * * * for which specific points of measurement are designated, water rights junior to the [1962] streamflow requirements shall be regulated as necessary to maintain the listed flows at the designated point of measurement. If the designated point of measurement is not at the downstream end of the specified stream reach, water rights junior to the streamflow requirements shall be regulated as necessary to maintain the listed flows throughout the reach between point of measurement and the downstream end of the reach."

Disputes over when the junior holders' rights could be limited continued and, as described by petitioner, "one user in the lower reach" responded to enforcement efforts by refusing "to be reined in by the agency and legal proceedings were initiated by the agency in late 1988." In January, 1989, the commission promulgated the challenged temporary rule, in the hope of resolving the perceived problem. The amendment to section (5)(c) provides (with added language emphasized and language bracketed deleted):

"For those streams * * * for which specific points of measurement are designated, water rights junior to the streamflow requirements shall be regulated as necessary to maintain the listed flows at the designated point of measurement. If the designated point of measurement is not at the downstream end of the specified stream reach, water rights *issued after January 30, 1987* [junior to the streamflow requirements] shall be regulated as necessary to maintain the listed flows throughout the reach between point of measurement and the downstream end of the reach."

The commission's "statement of need for the rule amendment" and "reasons supporting adoption of the amendment as a temporary rule" state:

"Minimum perennial streamflows were adopted for the North Fork of the John Day River in 1962. In 1987 the Water Resources Commission adopted rules for enforcement of minimum streamflows as part of its John Day Basin program. OAR 690-80-060(5)(c). The watermaster has regulated water rights junior to be minimum streamflow based upon staff interpretation of the 1987 rule together with the language adopted in 1962 when the minimum perennial streamflows were set. Water users on the North Fork of the John Day River argue that a different interpretation of the 1962 language is correct. There is ambiguity as to how the rules should

be interpreted. This rule amendment is necessary as a part of the Commission's resolution of the ambiguity.

"The Commission believes that the existing language of OAR 690-80-060(5)(c) does not reflect the best interpretation of the effect of the minimum streamflow established on the North Fork of the John Day River (and elsewhere in the John Day Basin) in 1962. If water users on the North Fork of the John Day River do not know what regulation for minimum flows to expect, they are seriously prejudiced by inability to plan effectively for the 1989 irrigation season. Furthermore, it is prejudicial to the public interest to retain ambiguous rule language when rules must be relied on (1) by the watermaster in enforcing minimum streamflows adopted in the public interest, and (2) by the water users in understanding the effect of applicable minimum streamflows. Before adopting a permanent rule amendment, the Commission must hold a hearing in the John Day Basin. ORS 536.300(3). That could not be accomplished soon enough to prevent these hardships during the 1989 irrigation season."

Petitioner contends that the statement and reasons do not satisfactorily make the showings required by ORS 183.335(5)(a) and (c). The thrust of petitioner's principal argument is that the 1987 rule was not ambiguous; that junior appropriators may not have been pleased with that rule, but they had no doubts about what it meant and knew what to expect under it; and that the proffered justifications for the temporary rule presuppose a non-existent ambiguity. Petitioner concludes that the stated reason for the rule was to resolve an ambiguity, but what the rule does instead is "change policy" without any showing of an "emergency" need to do so.

We agree with petitioner that the 1987 version of OAR 690-80-060(5)(c) was unambiguous and that it resolved any uncertainty about how the language of the underlying 1962 order would be applied. The fact that enforcement was resisted does not create an ambiguity. Moreover, the findings and statements that the commission did make do not support the adoption of this temporary rule. The substance of the rule is inconsistent with the stated need to resolve an ambiguity.[4]

---

[4] The statement of reasons supporting the adoption of the temporary rule may be internally contradictory on the point. In addition to its ambiguity rationale, it recites:

"The Commission believes that the existing language of OAR 690-80-060(5)(c) does not reflect the *best interpretation* of the effect of the minimum streamflow established on the North Fork of the John Day River * * * in 1962." (Emphasis supplied.)

Before it was amended by the temporary rule, OAR 690-80-060(5)(c) made maintenance of the flow throughout the downstream reach of the North Fork the standard for regulating *all* junior rights; the amendment retained that standard only for rights issued after January 30, 1987, and established the maintenance of flows only at the upstream measuring point as the criterion for regulating all other junior rights. The amendment was clearly a change in the substance of the regulation rather than a mere attempt to clarify for which the need was found.

Moreover, the ambiguity justification cannot *conceivably* support the distinction that the temporary rule draws between pre- and post-1987 junior rightholders: No ambiguity in the regulatory scheme could be resolved by placing some of the rightholders on one side and others on the opposite side of the supposedly fuzzy line. The apparent purpose of the 1987 dividing line was to distinguish between rights issued before and after the adoption of the basin program. That may well be a logical basis for a differentiation in substantive regulation. Nevertheless, the fact that the temporary rule creates the distinction further demonstrates that its aim or accomplishment is substantive regulation, rather than a simple resolution of which of two arguably applicable regulatory standards will be applied to all junior rightholders in the North Fork. The rule makes each standard applicable to some rights, and it establishes a new basis for delineating their applicability.

We agree with petitioner that the commission's findings and statement of need do not provide adequate support for the promulgation of the temporary rule and that the rule was therefore adopted without compliance with applicable rulemaking procedures. ORS 183.400(4)(c).

Petitioner also argues that the rule violates ORS 390.835, a section of the Scenic Waterways Act. We agree. *Diack v. City of Portland,* 306 Or 287, 759 P2d 1070 (1988).

Temporary rule held invalid.