Argued and submitted November 1, 2019, rules upheld January 16, 2020

FRIENDS OF THE COLUMBIA GORGE,
Oregon Wild,
Central Oregon LandWatch,
WildLands Defense,
Thrive Hood River,
Greater Hells Canyon Council,
Oregon Natural Desert Association,
Oregon Coast Alliance,
Audubon Society of Portland, and
Columbia Riverkeeper,
*Petitioners,*

*v.*

ENERGY FACILITY SITING COUNCIL
and Oregon Department of Energy,
*Respondents.*

(EFSC 92019) (SC S066993)

456 P3d 635

Petitioners challenged the validity of temporary rules adopted by the Energy Facility Siting Council. Petitioners argued that the rules were invalid because the council failed to prepare a statement of its findings justifying the use of temporary rules and because the rules exceed the 180-day limit on temporary rules or otherwise improperly operate retroactively. *Held*: (1) When reviewing a statement of serious prejudice under ORS 183.335(5)(a), courts review the substance of those statements and do not limit their review to ensuring that the agency perceives serious prejudice; (2) the council identified serious prejudice that would result from forgoing temporary rulemaking and waiting to complete the permanent rulemaking process; (3) a rule may become effective when it is adopted, even if the legal consequences of that rule might turn on events that occurred before the rule is adopted; (4) petitioners provided no legal support for the broad legal proposition that an action taken under invalid rules can never later be validated by new rules; (5) petitioners identified no legal grounds that prohibit an agency from adopting temporary rules the text of which previously appeared in permanent rules.

The rules are upheld.


En Banc

On judicial review from the Energy Facility Siting Council.*

_____

    * Judicial review from a final order of the Energy Facility Siting Council.

Nathan J. Baker, Friends of the Columbia Gorge, Portland, argued the cause and filed the briefs for petitioners. Also on the briefs were Steven D. McCoy; Peter M. Lacy, Oregon Natural Desert Association, Portland; and Gary K. Kahn, Reeves Kahn Hennessy & Elkins, Portland.

Denise G. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BALMER, J.

The rules are upheld.

**BALMER, J.**

In *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 446 P3d 53 (2019), this court held that the Energy Facility Siting Council had failed to substantially comply with a procedural requirement when it amended rules governing how it processes requests for amendment (RFAs) to site certificates that the council issued. The court therefore held that the rules were invalid. In response to that decision, the council adopted temporary rules governing the RFA process. Petitioners contend that those temporary rules are also invalid. According to petitioners, the rules are invalid because the council failed to prepare a statement of its findings justifying the use of temporary rules. Petitioners also maintain that the council's rules exceed the 180-day limit on temporary rules or otherwise improperly operate retroactively. For the reasons that follow, we disagree with petitioners' arguments and conclude that the temporary rules are valid.

## I.   BACKGROUND

The council issues site certificates that impose conditions on the construction, operation, and retirement of large energy facilities in Oregon. *See id.* at 373 (describing the council's structure and function). An extensive statutory framework governs the site certificate application process. *Id.* at 392-93. The legislature has not created a similarly extensive framework governing the process for amending site certificates that the council has already issued. Instead, "the legislature has allowed the council to develop that process largely as it sees fit." *Id.* at 393.

Before October 2017, the council processed RFAs under a set of rules, which the parties refer to as "the 2017 rules." After an extensive rulemaking process, the council replaced the 2017 rules with what the parties call "the 2018 rules." Petitioners challenged the 2018 rules on three procedural grounds and two substantive grounds. This court resolved those challenges in *Friends of Columbia Gorge.*

In that case, this court rejected two of the procedural grounds that petitioners had raised, which addressed

whether the council had to respond to certain comments and whether the council had adequately circulated copies of the proposed rules. *Id.* at 378-87. The court, however, agreed with petitioners' third ground, concluding that the council had not substantially complied with ORS 183.335 (3)(d) when it failed to state how it would determine whether the 2018 rules accomplished the council's rulemaking objectives. *Id.* at 387-90. Because, in adopting the 2018 rules, the council had failed to substantially comply with a procedural requirement in ORS 183.335, the court held that the 2018 rules were invalid. *Id.* at 390; *see* ORS 183.335(11)(a) (providing that "a rule is not valid unless adopted in substantial compliance with the provisions of [ORS 183.335]").

The court then addressed petitioners' two substantive objections to the 2018 rules to provide appropriate direction to the parties for any future rulemaking regarding the site certificate amendment process. First, the court held that the council had not exceeded its statutory authority by permitting its staff to determine, with respect to RFAs, whether there would be a public hearing and whether the public could request a contested case proceeding. *Friends of Columbia Gorge*, 365 Or at 390-94. Second, petitioners argued that the council had adopted rules that improperly limited judicial review of RFAs that had not received contested case proceedings. The court agreed with that substantive challenge, holding that the council had exceeded its statutory authority by adopting rules improperly limiting the scope of judicial review. *Id.* at 395.

The court issued that decision on August 1, 2019. The decision, however, was not immediately effective. Instead, under the relevant Oregon Rule of Appellate Procedure, the decision would become effective only when the court issued the appellate judgment in the case.[1] Because of an unresolved dispute over attorney fees, this court still has not issued the appellate judgment in that case.

---

[1] *See* ORAP 14.05(2)(b)-(c) ("The decision of the Supreme Court *** is effective[,] *** [w]ith respect to judicial review of administrative agency proceedings, on the date that the Administrator sends a copy of the appellate judgment to the administrative agency [and,] [w]ith respect to original jurisdiction proceedings, *** if no time period or date is specified, on the date of entry of the appellate judgment.").

On August 22, 2019, the council adopted, effective on that date, the temporary rules at issue in this case, which the parties refer to as the "2019 temporary rules." The 2019 temporary rules suspend the 2018 rules and replace them with rules that are nearly identical.

The 2019 temporary rules depart from the 2018 rules in two relevant respects. First, attempting to conform to this court's decision, the 2019 temporary rules modify provisions of the 2018 rules that had improperly limited judicial review of RFA orders. Second, the 2019 temporary rules change the provision governing the applicability of the rules. In the 2018 rules, that provision stated that the rules applied to all applications received after the 2018 rules went into effect in October 2017. OAR 345-027-0011 (2018). Those rules, therefore, applied the 2017 rules to RFAs filed while the 2017 rules were effective and applied the 2018 rules to RFAs filed while the 2018 rules were effective.

The 2019 temporary rules change that applicability provision to state that the 2019 temporary rules apply to new RFAs submitted after the effective date of those rules as well as pending RFAs that were submitted under the 2018 rules. Further, for pending RFAs submitted under the 2018 rules, the 2019 temporary rules state that the applicant would not have to repeat any steps in the application process that the applicant had already completed:

> "The rules in this division apply to all requests for amend-ment to a site certificate and amendment determina-tion requests for facilities under the Council's jurisdic-tion that are submitted to, or were already under review by, the Council on or after the effective date of the rules. The Department and Council will continue to process all requests for amendment and amendment determination requests submitted on or after October 24, 2017 for which Council has not made a final decision prior to the effective date of these rules, without requiring the certificate holder to resubmit the request or to repeat any steps taken as part of the request prior to the effective date of these rules."

OAR 345-027-0311(1) (2019).

In its order adopting the 2019 temporary rules, the council explained the prejudice that would result from

not adopting those temporary rules, which we discuss in more detail below. According to the council's order, the 2019 temporary rules are effective from August 22, 2019 until February 17, 2020. The council has initiated a new rulemaking process to adopt permanent rules that will replace the 2019 temporary rules.

## II. ANALYSIS

Rules are invalid if, among other reasons, an agency adopts the rules without substantially complying with ORS 183.335. *See Friends of Columbia Gorge*, 365 Or at 378 (so stating); ORS 183.335(11)(a) ("[A] rule is not valid unless adopted in substantial compliance with the provisions of this section."). Under ORS 183.335, an agency adopting *permanent* rules must comply with numerous procedural steps to provide public notice and receive public input. When adopting *temporary* rules, however, an agency has fewer procedural steps to follow, and those steps do not need to include preadoption notice and comment. ORS 183.335(5). The tradeoff is that, although temporary rules do not receive the same public scrutiny before adoption, temporary rules may be effective for only 180 days. ORS 183.335(6)(a). In this case, petitioners maintain, first, that the council failed to comply with at least one of the procedural steps required for temporary rules, and, second, that the 2019 temporary rules are effective for more than 180 days.

A.  *Whether the Council Prepared a Sufficient Statement of Serious Prejudice*

Petitioners ask the court to invalidate all the 2019 temporary rules because, according to petitioners, the council failed to comply with ORS 183.335(5)(a). That provision requires an agency adopting temporary rules to prepare "[a] statement of its findings that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned and the specific reasons for its findings of prejudice." ORS 183.335(5)(a).[2] The council

---

[2]  ORS 183.335(5) provides, in part:

"[A]n agency may adopt, amend or suspend a rule without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, if the agency prepares:

prepared a statement describing its grounds for finding serious prejudice. Petitioners, however, argue that the council's statement is inadequate.

### 1.   *Contents of the statement*

The council's statement is seven pages long. It starts by identifying the "[s]pecific consequences that would result from the failure to immediately adopt temporary rules." The statement notes that, although this court's decision in the earlier litigation had not yet taken effect, the council would nevertheless attempt to comply with the court's decision. However, the statement goes on to say that there was a legal dispute about how to comply with that decision. Petitioners took the position that, as a result of this court's decision, the 2017 rules were once again in effect. Petitioners also maintained that, under the 2017 rules, the site certificates would expire for two certificate holders with pending RFAs, requiring those certificate holders to start over the entire certificate application process. For the remaining four certificate holders with pending RFAs, petitioners insisted that each would have to start over the RFA process under the 2017 rules.

The council explained that it did not share petitioners' views. According to the council, this court's decision invalidating the 2018 rules might not revive the 2017 rules. Instead, the council thought that it was possible that there would be no rules governing the review of RFAs. In light of that uncertainty, "certificate holders have questions and significant concerns regarding how the Council will proceed with pending requests for amendment, and ODOE

---

"(a) A statement of its findings that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned and the specific reasons for its findings of prejudice;

"(b) A citation of the statutory or other legal authority relied upon and bearing upon the promulgation of the rule;

"(c) A statement of the need for the rule and a statement of how the rule is intended to meet the need;

"(d) A list of the principal documents, reports or studies, if any, prepared by or relied upon by the agency in considering the need for and in preparing the rule, and a statement of the location at which those documents are available for public inspection; and

"(e) For an agency specified in ORS 183.530, a housing cost impact statement as defined in ORS 183.534."

is uncertain how to process any new requests that it may receive." The council additionally noted that, if the 2017 rules applied, applicants with pending RFAs would be prejudiced by having to restart the costly and time-consuming application process under the 2017 rules. The council also maintained that future RFA applicants would be prejudiced because they might be required to initially proceed under the 2017 rules even though the council intends to adopt new permanent rules later. The council asserted that RFA applicants who began the process under the 2017 rules would face uncertainty as to the status of their applications once the council adopts new rules.

The council then provided an extended description of the six pending RFAs, their status in the application process, and the significant costs required to prepare an RFA and participate in the RFA process. According to the council, if petitioners' reading of the 2017 rules were correct, and the site certificates would expire for two certificate holders with pending RFAs, then the cost and delay of reapplication would put those two facilities "in jeopardy." The council additionally stated that delays in completing the RFAs put other applicants at risk of violating contractual and statutory obligations related to their projects. Finally, the council explained that the 2017 rules "impose unnecessary delays and costs to certificate holders seeking site certificate amendments" because those rules did not provide the same options for expedited review that were provided in the 2018 rules and the 2019 temporary rules. *See Friends of Columbia Gorge*, 365 Or at 375 (describing options for expedited review).

   2.   *Judicial review of an agency's finding of serious prejudice*

Petitioners challenge the sufficiency of the council's statement of serious prejudice. The parties first dispute the extent to which courts review those statements. Petitioners contend that courts review the substance of those statements to ensure that the serious prejudice identified provides sufficient grounds to justify temporary rulemaking. The council maintains that courts may not scrutinize the substance of agency statements of serious prejudice or

findings of serious prejudice. Instead, the council argues that courts review statements of serious prejudice only to ensure that the agency perceives serious prejudice. For the reasons that follow, we reject the council's argument.

To support its position, the council points to case law applying a different statement requirement in ORS 183.335—namely, the statement of need required by ORS 183.335(2)(b)(C). That provision provides that, in a notice of intended permanent rulemaking, an agency must include "[a] statement of the need for the rule and a statement of how the rule is intended to meet the need." In *Fremont Lumber Co. v. Energy Facility Siting Council*, 325 Or 256, 936 P2d 968 (1997), this court assessed whether the council had complied with that requirement. There, the council issued a notice of intended rulemaking proposing new permanent rules. To satisfy the statement-of-need requirement, the council asserted in its notice that the new rules were needed to clarify an ambiguity in the existing rules. The petitioners challenged that statement of need by contending that the existing rules were not ambiguous.

This court explained that "the validity of any particular statement of need must be measured against the legislature's intent in requiring a statement of need in the first place." *Id.* at 261. After determining that the legislature's intent was not clear from the text, the court reviewed the legislative history. According to the court's review, the legislature added the statement-of-need requirement to ensure that interested persons could meaningfully participate in the public comment period by "submit[ting] data and arguments that were responsive to the agency's concerns in proposing the rule or rule change." *Id.* at 262. By stating why the rule is needed and how the rule satisfies that need, the agency enables interested parties to address the legal and factual premise of the proposed rule and consider alternatives for achieving the goal that the agency is pursuing.

Based on that review of the statutory purpose for the statement, the court concluded that a statement of need is not insufficient simply because the stated need rests on a premise that is legally or factually incorrect. If the stated need is incorrect, then, through the public comment

process, interested persons can point out that error before the agency adopts the proposed rule. As the court noted, "[A] statement's usefulness may lie precisely in the fact that it brings the agency's mistaken legal or factual premises to light, thereby giving interested persons valuable insight in crafting written and oral comments on the proposed rule." *Id.* The court therefore held that a statement of need is sufficient if it reports "a need that the rule-proposing agency *perceives.*" *Id.* (emphasis in original). And the court concluded that the council's statement of need met that standard.

In this case, the council argues that we should apply the same standard for reviewing the council's statement of serious prejudice. The council's argument, however, is conclusory. And it is unclear why the council thinks that the standard governing the statement of need in the permanent rulemaking process should also govern the statement of serious prejudice required in the temporary rulemaking process, which fulfills a different statutory requirement.

To the extent that the council contends that courts should assess all "statement" requirements under the same standard, this court expressly rejected that argument in *Fremont Lumber.* In that case, although the court concluded that the council had satisfied the statutory statement-of-need requirement, the court nevertheless invalidated the council's rules because the council had failed to comply with a different statement requirement, the fiscal impact statement required by ORS 183.335(2)(b)(E).[3]

The council had argued that its fiscal impact statement was sufficient because it reflected the fiscal impact that the council *perceived*, regardless of the extent to which

---

[3] Under that provision, an agency must include in its notice of proposed rulemaking

"[a] statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."

ORS 183.335(2)(b)(E).

that perception was demonstrably wrong. The court rejected that argument, explaining that, although the council's perception of need was sufficient to satisfy the statement of need, that standard is not a "general proposition applicable to *all* the notice requirements." *Fremont Lumber*, 325 Or at 265 (emphasis in original). Instead, that standard is "a corollary to the specific legislative purpose behind" the statement of need. *Id.* The court concluded that, unlike the statement of need, the purpose of the fiscal impact statement is not simply to notify the public of what an agency is thinking. Instead, the court held that the purpose of the fiscal impact statement is to notify the public of the potential fiscal effects of the proposed rule. *See id.* at 267 (indicating that one purpose of the fiscal impact statement is to state the potential costs of compliance so that "interested persons are alerted to that possibility"). The court concluded that the council's fiscal impact statement failed to meet that standard. *Id.* at 267-68. The court's analysis of the fiscal impact statement in *Fremont Lumber* precludes any argument by the council in this case that the standard governing the statement of need governs all statement requirements.

Nevertheless, the standard governing the statement of need announced in *Fremont Lumber* might still govern the statement of serious prejudice at issue here if doing so would similarly satisfy the legislative purpose. But the text of the provision requiring the statement of serious prejudice makes clear that the two statement requirements cannot serve the same legislative purpose. While the statement of need is intended to facilitate public participation in the permanent rulemaking process, the statement of serious prejudice is used to bypass the very same public participation. *See* ORS 183.335(5)(a) (requiring an agency to prepare a statement of serious prejudice to justify rulemaking "without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable"). So, unlike the statement of need, the statement of serious prejudice cannot be intended to ensure that interested persons may meaningfully participate in the public comment period.

The text does not otherwise aid our analysis. The provision requiring the statement of serious prejudice, ORS 183.335(5)(a), contains no more direction to courts reviewing

those statements than the provisions requiring the statement of need and the fiscal impact statements. And, in *Fremont Lumber*, this court concluded that the text of those provisions did not specify a standard of review. *See, e.g.*, 325 Or at 261 ("[T]he legislature's purpose in enacting [the provision requiring a statement of need] is not clear from the text or context of the provision itself. We know that the legislature wants a statement of 'need,' but we cannot tell with confidence what would be enough of a statement.").

As a result, the court in *Fremont Lumber* relied heavily on legislative history. The legislative history relevant here does not contain an express statement of the role that the legislature intended for the statement of serious prejudice. As originally passed by the House of Representatives, the provision that would become ORS 183.335(5) stated:

> "If an agency finds that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt a rule without notice."

Engrossed HB 1213 (1971).

In a memorandum to the Senate Committee on Judiciary, which was considering the bill passed by the House, then-Professor Hans Linde recommended a modification: "After '*** concerned,' there should be added 'and sets forth detailed and specific grounds for this finding ***.'" According to Professor Linde,

> "This is important. Whenever an officer or agency is authorized to dispense with statutory procedures upon making a certain finding, the obvious temptation is to recite the necessary finding in the terms of the statute. Whenever such authority is given, therefore, it must require as a measure of agency self-restraint that the basis for the finding is stated specifically and in detail."

H. Linde, *Section-by-Section Comments on Engrossed HB 1213*, 4 (May 17, 1971).

The Senate adopted Professor Linde's proposed text, which was incorporated into the bill that the legislature enacted. Although that rationale and the words added

to the statute certainly suggest that a court may review a statement of serious prejudice to ensure that it is sufficiently detailed or specific, nothing in the legislative history suggests that those are the only grounds upon which a court may review a statement of serious prejudice.[4]

Rather, the specificity required by the statute was likely intended to enable judicial review of an agency's finding of serious prejudice. As noted above, the statement of serious prejudice does not facilitate public participation and is, instead, used by agencies to adopt temporary rules while bypassing public participation. The legislature, however, intended for that public participation to be central to the administrative rulemaking process. And temporary rulemaking, without that public participation, is intended to be the exception. Thus, by requiring an agency both to find that its failure to act promptly will result in serious prejudice and to provide the details supporting that finding, the statute ensures that courts may review those findings and prevent agencies from needlessly excluding the public from the rulemaking process. We therefore conclude that courts must review an agency's determination "that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned." ORS 183.335(5)(a); *see also Waterwatch of Oregon v. Oregon Water Res. Comm.*, 97 Or App 1, 5, 774 P2d 1118 (1989) (rejecting an agency's stated grounds for justifying temporary rulemaking).

### 3.    *Whether the council's findings are sufficient*

We now turn to that review. The statute requires an agency to determine that a "failure to act promptly

---

[4] Other provisions of ORS 183.335 that the legislature enacted in 1971 follow the Model State Administrative Procedure Act (MSAPA) (1961). As described below, the legislature did not follow the MSAPA's substantive standard for authorizing temporary rulemaking. But, like the provision that the legislature adopted, the MSAPA's standard requires an agency to "state[ ] in writing its reasons" for finding that an emergency exists. MSAPA § 3(b). Courts applying the MSAPA's standards have reviewed such statements both to ensure that the statements are sufficiently detailed, *see, e.g.*, *Brodsky v. Zagata*, 165 Misc 2d 510, 515, 629 NYS2d 373, 377 (Sup Ct 1995) (holding that "mere parroting" of the statutory standard is insufficient), and to ensure that those statements meet the substantive standard, *see, e.g.*, *Citizens for a Better Env't v. Illinois Pollution Control Bd.*, 152 Ill App 3d 105, 109, 504 NE2d 166, 169 (1987) ("[C]ourts are not conclusively bound by an agency's determination that an emergency exists.").

will result in serious prejudice to the public interest or the interest of the parties concerned" and to state "the specific reasons for its findings of prejudice." ORS 183.335(5)(a). Petitioners contend that the council's findings fail to support its determination that prompt action was needed to avoid serious prejudice.

Petitioners maintain that an agency must overcome a high bar to reasonably conclude that temporary rules are needed to avoid serious prejudice. They point out that, in considering the original bill that became the statement-of-serious-prejudice requirement in ORS 183.335(5)(a), the House Committee on Judiciary removed the word "serious," thus requiring an agency to demonstrate only that failing to enact immediate temporary rules would result in "prejudice." Ultimately, though, the Senate Committee on Judiciary added the word "serious" back into the bill's text, at the urging of then-Professor Linde. Linde, *Section-by-Section Comments on Engrossed HB 1213* at 4. Petitioners argue that the inclusion of the word "serious" indicates a high bar, which the financial interests identified by the council cannot meet.

Although serious prejudice is certainly a higher bar than mere prejudice, petitioners' argument fails to account for the larger context provided by the legislative history. When enacted in 1971, much of ORS 183.335 followed the text and structure of the 1961 version of the Model State Administrative Procedure Act (MSAPA). But one point of departure was the statement-of-serious-prejudice requirement. Under the 1961 MSAPA, an agency could adopt temporary rules, without notice and comment procedures, if the agency found "that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon fewer than 20 days' notice and states in writing its reasons for that finding." MSAPA § 3(2)(b) (1961). Because an agency was required to provide at least 20 days' notice before adopting permanent rules under the MSAPA, the temporary rulemaking provision required, in effect, that the agency find that "imminent peril to the public health, safety, or welfare" would likely occur if the agency was required to go through even the shortest possible permanent rulemaking process.

The legislature chose not to adopt that standard. Instead of requiring an agency to identify "imminent peril to public health, safety, or welfare" that is likely to occur within the shortest possible timeframe to complete permanent rulemaking, the legislature instead adopted a provision that requires an agency to find that "serious prejudice to the public interest or the interest of the parties" is likely to occur if the agency "fail[s] to act promptly." ORS 183.335 (5)(a). Although not every prejudice will be sufficiently serious or require sufficiently prompt action to justify bypassing the public participation required by the permanent rulemaking process, the standard that the legislature adopted is more flexible and permissive than the standard contained in the MSAPA.

Petitioners contend that the financial interests identified by the council are insufficient and that, in any event, the council could have protected those financial interests by waiting to adopt the 2019 temporary rules as permanent rules after going through the normal notice and comment period.

Petitioners are correct that not all the reasons that the council has given justify adopting temporary rules that bypass public participation. For example, the council attempted to justify its temporary rules on the ground that, after this court's decision in *Friends of Columbia Gorge* takes effect, site certificate holders would not know what rules govern the council's review of RFAs. Such legal uncertainty, without more, is insufficient. Regulated entities undoubtedly prefer legal guidance sooner rather than later. But if providing regulated entities with immediate guidance were, by itself, sufficient, then agencies would be able to justify temporary rulemaking whenever they adopt regulations implementing new statutes. That would allow temporary rulemaking to be commonplace, rather than exceptional, and would be therefore inconsistent with legislative intentions. Thus, to justify temporary rulemaking based on a need to provide regulated entities with immediate legal guidance, an agency must point to serious prejudice that will result from delaying legal guidance during the time that it takes to complete a reasonable permanent

rulemaking process, which is not necessarily the statutory minimum timeframe.

Although the council's reliance solely on legal uncertainty would be insufficient, here, the council also identified serious prejudice that would result from forgoing temporary rulemaking and waiting to complete the permanent rulemaking process. Notably, the council was attempting to respond to positions taken by petitioners. For example, in this case and in other communications with the council following the issuance of our decision in *Friends of Columbia Gorge*, petitioners maintained that, once the 2018 rules were invalid, then the 2017 rules were revived and the site certificates for at least two of the projects would automatically expire, requiring certificate holders to begin the entire site certificate application process anew. According to petitioners, construction on those projects did not begin within the timeframes set out in their site certificates, which normally would lead to the expiration of the site certificate. Those site certificates did not expire under the 2018 rules, because those rules stayed expiration if the certificate holder had a pending RFA. But petitioners contended that the 2017 rules did not include a similar stay provision. So, according to petitioners, if the 2017 rules became effective, then those two site certificates would expire and they would have to begin the application process again. In its statement of serious prejudice, the council identified those two projects and stated that, if they were required to start over with the costly and time-consuming application process, then both projects would be in jeopardy.

Thus, petitioners' position gave the council a reason to adopt the 2019 temporary rules promptly—before this court issued the appellate judgement and the 2018 rules became invalid. If the council adopted the 2019 temporary rules before the 2018 rules became invalid, then the council could avoid the possibility that the 2017 rules would be revived and could maintain the stays on expiration that might otherwise be lifted. In its order adopting the 2019 temporary rules, the council noted that it was uncertain when this court would issue the appellate judgment but that it could occur as early as August 22, 2019. And the council adopted the 2019 temporary rules on August 22, 2019.

The council does not concede that petitioners' legal arguments regarding the timing and effect of this court's invalidation of the 2018 rules on existing RFAs are correct. The council instead maintains that it is unclear whether the 2017 rules would be revived automatically, and it disagrees with petitioners' position that the two stays on expiration would be lifted under the 2017 rules.[5] But the council does not need to concede petitioners' understanding of the law to justify the need for prompt action. The council acted promptly to avoid the serious prejudice that would result *if* petitioners were correct in that understanding. We conclude that the council's statement of serious prejudice is sufficient.

B.    *Whether OAR 345-027-0311(1) Is Valid*

As noted above, the 2019 temporary rules largely duplicate the 2018 rules, with two exceptions: the provision addressing judicial review and the provision addressing the applicability of the 2019 temporary rules. Petitioners challenge the applicability provision, OAR 345-027-0311(1). That provision states that the council

> "will continue to process all requests for amendment and amendment determination requests submitted on or after October 24, 2017 for which Council has not made a final decision prior to the effective date of these rules, without requiring the certificate holder to resubmit the request or to repeat any steps taken as part of the request prior to the effective date of these rules."

OAR 345-027-0311(1).

Petitioners present two objections to the applicability provision. First, petitioners contend that that provision violates ORS 183.335(6)(a), which prohibits temporary rules from being in effect for more than 180 days: "A rule adopted, amended or suspended under subsection (5) of this section is temporary and may be effective for a period of not longer than 180 days." According to petitioners, the challenged applicability provision "reaches back in time—all the way

---

[5] At oral argument, petitioners noted that the 2017 rules included an automatic stay provision that they had previously overlooked. Petitioners did not explain whether the two potentially expiring site certificates would fall under the newly identified stay provision. Regardless, we assess the council's decision to adopt the temporary rules based on the circumstances at the time of adoption.

back to October 24, 2017—to expressly apply the 2019 rules to all applications submitted on or after that 2017 date." If OAR 345-027-0311(1) has been effective since October 24, 2017, then it would exceed the 180-day limit on temporary rules.

Petitioners' argument, however, misunderstands what it means for rules to be "effective." According to *Black's Law Dictionary* (11th ed 2019), "effective" relevantly means "in operation at a given time." *Id.* at 651.[6] The applicability provision was put into operation on August 22, 2019, when the council adopted that provision and made it effective. The applicability provision was not effective before then. It is true that the legal consequences of that provision on particular applicants might be different based on events that occurred before that provision was in effect. But that does not change the fact that that provision was not effective until August 22, 2019.

Second, petitioners argue that the applicability provision is an unlawful attempt to retroactively legitimize actions that took place under the invalid 2018 rules. According to petitioners, an action taken under invalid rules can never later be validated by new rules. But petitioners provide no legal support—either in statute or case law—for such a broad rule of law. The only legal authority that petitioners cite is *Gooderham v. AFSD*, 64 Or App 104, 667 P2d 551 (1983). In that case, however, the Court of Appeals did not hold that an action taken under invalid rules can never be later validated by new rules. Instead, the court applied a multifactor balancing test to assess the reasonableness of the retroactivity in the specific circumstances of that case. *Id.* at 108-10. The broad rule that petitioners propose would preclude the kind of balancing test that the Court of Appeals applied in *Gooderham*. As a result, that decision provides no support for petitioners. And because petitioners do not

---

[6] As noted above, the relevant statutory language was adopted in 1971. The version of *Black's Law Dictionary* that is contemporaneous with that passage does not define the term "effective." But that dictionary defined "effect" in a manner that is consistent with the current definition of "effective." *See Black's Law Dictionary*, 605 (4th ed 1968) (defining "effect" to mean, among other things, "[t]he operation of a law, of an agreement, or an act"); *see also Ballentine's Law Dictionary*, 391 (3d ed 1969) (defining "effective date" to mean "[t]he date when a code of laws, a constitution, or single statute or constitutional amendment becomes binding law").

identify any other basis for their proposed rule, we reject petitioners' argument that the council could not adopt new rules that validated actions taken under previous rules that this court later held were invalidly promulgated.

## C.   *Whether the Rest of the Rules Are Valid*

Finally, petitioners argue that the rest of the 2019 temporary rules are also effective for more than 180 days because, with the two exceptions noted above, the 2019 temporary rules are identical to the 2018 rules. Because the two sets of rules are substantively the same, petitioners maintain that we should treat them as one set of rules. If they are one set of rules, then the effective date of the 2019 temporary rules would actually be October 24, 2017, the effective date of the 2018 rules. If the 2019 temporary rules have been effective since October 24, 2017, then those rules exceed the 180-day limit on temporary rules.

Petitioners do not, however, point to any legal grounds that prohibit an agency from adopting temporary rules containing text that previously appeared in permanent rules, which is the situation in this case. And petitioners have provided no reason for thinking that the legislature would want this court to treat those two sets of rules as one. In other words, nothing about treating the 2018 rules and the 2019 temporary rules as two separate sets of rules frustrates any legislative design or purpose that petitioners have identified. The 2019 temporary rules became effective when the council adopted them on August 22, 2019, and not before then.

The rules are upheld.