Argued and submitted January 7; OAR 345-015-0083(2), OAR 345-027-0371(10)(a),
and OAR 345-027-0357(1) declared invalid May 6, 2021.

FRIENDS OF THE COLUMBIA GORGE,
Oregon Wild, Central Oregon Landwatch,
Wildlands Defense, Thrive Hood River,
Greater Hells Canyon Council,
Oregon Natural Desert Association,
Oregon Coast Alliance,
Audubon Society of Portland,
and Columbia Riverkeeper,
*Petitioners,*

*v.*

ENERGY FACILITY SITING COUNCIL
and Oregon Department of Energy,
*Respondents.*

(EFSC 1-2020) (SC S067568)

486 P3d 787

Petitioners challenged the validity of rules adopted by the Energy Facility Siting Council, arguing that the rules exceeded the scope of the council's authority. Two of the challenged rules, OAR 345-015-0083(2) and OAR 345-027-0371(10)(a), restrict the scope of participation for parties in contested case proceedings. The third challenged rule, OAR 345-027-0350(4), authorizes the Department of Energy, under certain conditions, to allow a site certificate holder to expand a site boundary without a certificate amendment. *Held*: (1) The council exceeded the scope of its authority in adopting OAR 345-015-0083(2) and OAR 345-027-0371(10)(a), because those rules did not apply only to limited parties and therefore violated provisions of the Oregon Administrative Procedure Act that protect the participation rights of full parties in contested case proceedings; (2) the council exceeded the scope of its authority in adopting OAR 345-027-0350(4), because a site boundary cannot be expanded without a site certificate amendment.

OAR 345-015-0083(2), OAR 345-027-0371(10)(a), and OAR 345-027-0357(1) are declared invalid. This decision shall become effective when the time to file a petition for reconsideration under ORAP 9.25(1) expires, unless a petition for reconsideration is timely filed. Any timely petition for reconsideration shall stay the effectiveness of this decision until the court acts on such petition.

On judicial review from the Energy Facility Siting Council.*

_____

* Judicial review from a final order of the Energy Facility Siting Council.

Gary K. Kahn, Reeves, Kahn, Hennessy & Elkins, Portland, argued the cause and filed the briefs for petitioners. Also on the briefs were Nathan J. Baker and Steven D. McCoy, Friends of the Columbia Gorge, Peter M. Lacy, Oregon Natural Desert Association, and Erin K. Saylor, Columbia Riverkeeper.

Patty Rincon, Assistant Attorney General, Salem, argued the cause for respondents. Denise G. Fjordbeck, Assistant Attorney General, filed the brief. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Kistler, Senior Judge, Justice pro tempore.**

GARRETT, J.

OAR 345-015-0083(2), OAR 345-027-0371(10)(a), and OAR 345-027-0357(1) are declared invalid. This decision shall become effective when the time to file a petition for reconsideration under ORAP 9.25(1) expires, unless a petition for reconsideration is timely filed. Any timely petition for reconsideration shall stay the effectiveness of this decision until the court acts on such petition.

_____

** Balmer, J., did not participate in the consideration or decision of this case.

**GARRETT, J.**

In January 2020, the Energy Facility Siting Council adopted permanent rules addressing the process for amending site certificates and other procedural aspects of the council's work. Petitioners challenge three of the council's new rules on two grounds, maintaining that the rules exceed the council's statutory authority. For the reasons that follow, we agree with petitioners and declare that the challenged rules are invalid.

## I.   BACKGROUND

The council oversees the development of large energy facilities in Oregon, including electric power generating plants, high-voltage transmission lines, gas pipelines, and radioactive waste disposal sites, among other projects. ORS 469.300(11)(a). The council carries out that task by issuing site certificates to developers. *See* ORS 469.320(1) ("[N]o facility shall be constructed or expanded unless a site certificate has been issued for the site."). A site certificate authorizes the certificate holder to construct, operate, and retire a facility on an approved site, subject to the conditions that the council includes in the certificate. ORS 469.401(1); *see* ORS 469.300(26) (defining "site certificate").

The legislature created a "detailed statutory framework governing the site certificate application process." *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 374, 446 P3d 53 (2019). The legislature, however, did not create a similarly detailed statutory framework governing the process for amending site certificates that the council has already issued. Instead, "the legislature has allowed the council to develop that process largely as it sees fit." *Id.* at 393. As a result, the council has adopted administrative rules governing how it processes requests for amendment (RFAs) to site certificates.

In October 2017, the council adopted new rules that substantially revised the RFA process. This court invalidated those rules after concluding that the council failed to substantially comply with a procedural requirement. *Id.* at 387-90. The council then replaced the invalidated rules with temporary rules while it undertook the process necessary

to adopt new permanent rules. *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 366 Or 78, 81-82, 456 P3d 635 (2020). In January 2020, the council issued Order EFSC 1-2020, which replaced the temporary rules with permanent rules. Petitioners timely petitioned this court in March 2020 to challenge three of the rules that the council adopted. *See* ORS 469.490 (requiring a petition challenging the council's rules to be filed in this court within 60 days of the rules becoming effective).

## II.   ANALYSIS

Petitioners contend that the challenged rules are invalid because they exceed the council's statutory authority. *See* ORS 469.490 ("The review by the Supreme Court of the validity of any rule adopted by the council shall otherwise be according to ORS 183.400."); ORS 183.400(4)(b) (requiring the invalidation of a rule that "[e]xceeds the statutory authority of the agency"). According to petitioners, two of the rules improperly limit party participation in contested case proceedings and the third rule improperly authorizes the expansion of site certificate boundaries without a site certificate amendment. The council disputes those arguments.

### A.   *Limited Parties*

As part of Order EFSC 1-2020, the council adopted two rules that limit participation in contested case proceedings. One rule governs the scope of participation in contested case proceedings regarding initial site certificate applications, OAR 345-015-0083(2), while the other rule governs the scope of participation in contested case proceedings regarding RFAs to site certificates that the council has already issued, OAR 345-027-0371(10)(a).

The challenged rules impose similar limits as part of similar processes. Regarding both site certificate applications and RFAs, the council's contested case proceedings are preceded by the Department of Energy issuing a draft proposed order that recommends granting, denying, or modifying the application or RFA. ORS 469.370(1); OAR 345-027-0365. The council then conducts a public hearing on the draft proposed order. ORS 469.370(2); OAR 345-027-0367(1).

During that public hearing, members of the public may raise issues regarding the draft proposed order. Following the public hearing, the department issues a proposed order recommending that the council grant, deny, or modify the site certificate application or RFA. ORS 469.370(4); OAR 345-027-0371(1).

The contested case proceedings provide a mechanism for resolving disputes that remain following the public hearing and the department's proposed order. Subject to exceptions, the contested case proceedings are limited to issues raised at the public hearings. ORS 469.370(5); OAR 345-027-0371(5). The rules that petitioners challenge in this case address who may participate as to what issues during the contested case proceedings. In most cases, the challenged rules prevent a party from participating as to issues that that party did not raise at the preceding public hearing, therefore imposing a raise-it-or-waive-it requirement.

The first challenged rule addresses the site certification application process. After the department issues its proposed order, but before the contested case proceeding begins, the hearing officer issues a prehearing order identifying the issues to be addressed in the contested case proceeding and "limiting parties to those issues they raised on the record of the public hearing." OAR 345-015-0083(2).

The second challenged rule addresses the RFA process. Under that process, persons who participated in the public hearing may request a contested case proceeding. If the council concludes that a contested case proceeding is justified, then the council "must identify the contested case parties and the issues each contested case party may participate on." OAR 345-027-0371(10)(a). Further, "[t]he issues a party to a contested case proceeding may participate on must be limited to those issues that party properly raised in its contested case request that the Council found sufficient to justify a contested case, except that the certificate holder may participate on any issue the Council found sufficient to justify a contested case proceeding." *Id.*

The question is whether those rules, by restricting the participation of parties in contested case proceedings,

exceed the scope of the council's statutory authority. In adopting the rules, the council cited only one statute as authority, ORS 469.470, which allows the council to "adopt standards and rules to perform the functions vested by law in the council." ORS 469.470. Petitioners contend that the council is not vested with the authority to restrict the participation of a party in the manner that it has done, because such restrictions are contrary to provisions of the Oregon Administrative Procedure Act (APA) that protect the participation rights of parties in contested case proceedings.

The APA defines "party" to mean:

"(a)   Each person or agency entitled as of right to a hearing before the agency;

"(b)   Each person or agency named by the agency to be a party; or

"(c)   *Any person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result.* The agency's determination is subject to judicial review in the manner provided by ORS 183.482 after the agency has issued its final order in the proceedings."

ORS 183.310(7) (emphasis added). Thus, at least in reference to persons requesting to participate before the agency, the APA defines "party" to encompass a "party" as well as a person with "limited party status." The APA does not define "limited party" or "limited party status," which are terms that we use interchangeably below.

That distinction is important because the APA sets out certain statutorily protected participation rights of "parties," ensuring that they can address all proper issues in the proceedings. For example, the APA provides that "parties [to contested case proceedings] may elect * * * to respond and present evidence and argument on *all issues* properly before the presiding officer in the proceeding." ORS 183.417(1) (emphasis added); *see also* ORS 183.413(2)(e) (requiring a prehearing notice to state "that the party has the right to respond to *all issues* properly before the presiding officer and present evidence and witnesses on those issues" (emphasis added)). Similarly, the APA provides, "Every party shall

have the right of cross-examination of witnesses who testify and shall have the right to submit rebuttal evidence." ORS 183.450(3).

Despite granting those participation rights to "parties," and despite including a "limited party" within the definition of "party," the legislature did not extend those same participation rights to limited parties. Instead, the legislature authorized agencies to define the scope of participation for limited parties. Immediately after providing that parties may "respond and present evidence and argument on all issues" properly raised in the contested case proceeding, ORS 183.417(1), the APA provides that agencies may "adopt rules of procedure governing participation in contested case proceedings by persons appearing as limited parties," ORS 183.417(2). And, immediately after providing that parties may cross-examine witnesses and submit rebuttal evidence, ORS 183.450(3), the APA provides that "[p]ersons appearing in a limited party status shall participate in the manner and to the extent prescribed by rule of the agency," *id.* As a result of those statutory provisions, the APA authorizes agencies to restrict the participation for limited parties in ways that agencies cannot for other parties entitled to the full participatory rights otherwise set out in the APA. We refer to the latter as full parties to distinguish them from limited parties.

The legislative history of the APA explains the purpose of the distinction. The legislature added the concept of a "limited party" in 1979 to reintroduce agency control over the scope of participation for persons intervening in contested case proceedings. Or Laws 1979, ch 593, § 6(5)(c). Although the APA did not originally define "party," it nevertheless distinguished between parties "entitled as of right" to a contested case proceeding and parties "permitted to intervene by the agency" in the proceeding. Or Laws 1957, ch 717, § 9(3). For parties entitled to a proceeding as a matter of right, the APA protected the scope of their participation. *Id.* But the APA allowed agencies to limit the participation of intervening parties. *See id.* ("Parties permitted to intervene by the agency shall have such rights as determined by the agency by rule or otherwise.").

That framework remained following 1971 amendments that, for the first time, defined the term "party." That definition excluded intervenors. Or Laws 1971, ch 734, § 1(5). Intervenors, instead, were referred to merely as "[p]articipants." Or Laws 1971, ch 734, § 15(3). The 1971 changes, however, did not affect the authority of agencies to limit an intervenor's scope of participation. *See id.* ("Participants permitted to intervene by the agency shall have such rights as determined by the agency by rule or otherwise.").

The legislature eliminated the distinction between parties and intervening participants in 1977 by expanding the definition of "party" to include persons who previously would have been treated as intervening participants. Or Laws 1977, ch 798, § 1(5). That updated definition of "party" resembles the current definition but without the reference to "limited party status."[1] Because the amendment brought intervening participants within the definition of "party," the legislature eliminated the provision that had authorized agencies to restrict the scope of participation for intervening participants. Or Laws 1977, ch 798, § 3(3). Intervenors, therefore, gained the same participation rights as parties entitled to participate as a matter of right or otherwise named by the agency to be a party.

Not long after the legislature enacted those amendments, state agencies raised concerns that affording intervenors the same participation rights as other parties could overburden contested case proceedings. In October 1978, the Subcommittee on Administrative Procedure Act, chaired by Representative David B. Frohnmayer, suggested numerous amendments to the APA, including the creation of a "limited party" status with restricted participation rights:

---

[1] Under the 1977 version of the statute, "party" was defined to mean:

"(a) Each person or agency entitled as of right to a hearing before the agency;

"(b) Each person or agency named by the agency to be a party; or

"(c) *Any person requesting to participate before the agency as a party which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result.* The agency's determination is subject to judicial review in the manner provided by ORS 183.482 after the agency has issued its final order in the proceedings."

Or Laws 1977, ch 798, § 1(5) (emphasis added).

> "It is suggested that the definition of the term 'party' be amended to permit some form of limited party status, so that interested persons may participate in agency hearings to address specific issues or policy matters without becoming full parties subject to all of the rights and responsibilities attending that status."

Legislative Counsel Committee, *Final Report of the Subcommittee on Administrative Procedure Act*, 12 (1978).[2]

The legislature adopted that recommendation in 1979 and inserted the concept of limited parties into the definition of "party" that exists today. Or Laws 1979, ch 593, § 6(5)(c), *codified as* ORS 183.310(7)(c). As a result, a person requesting to participate as an intervenor in a particular contested case proceeding might be either a full party or a limited party. *See* ORS 183.310(7) (defining "party" to include "[a]ny person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result").

At the same time, the legislature also reinstated the provision authorizing agencies to limit the scope of participation, which now applied only to limited parties rather than to all intervenors. *See* Or Laws 1979, ch 593, § 21(3), *codified as* ORS 183.450(3) ("Persons appearing in a limited party status shall participate in the manner and to the extent prescribed by rule of the agency."). The legislature further recognized that authority by providing that "[a]gencies may adopt rules of procedure governing participation in contested cases by persons appearing as limited parties." Or Laws 1979, ch 593, § 18(4), *currently codified as* ORS 183.417(2).

In short, while a person entitled as of right to a hearing before the agency and a person named by the agency to

---

[2] *See also* Tape Recording, House Committee on Judiciary, HB 2497, Apr 5, 1979, Tape 38, Side 2 (statement of Rep David B. Frohnmayer) ("The committee generally concedes that a mistake was made in 1977 when legislators abolished the category of 'intervenor'[.] *** In subsequent discussions with judges and administrative practitioners, there is an enormous amount of worry as to whether or not you could have proceedings where more than 100 parties to a case all of whom demand a right to present evidence, prosecute and so forth, and make a proceeding totally unwieldy.").

be a party are always full parties, ORS 183.310(7)(a), (b), a person requesting to participate before the agency—in the nature of an intervenor—might be either a full party or a limited party in a particular contested case proceeding, ORS 183.310(7)(c). And there is no dispute in this case that an agency may, by rule, restrict rights of participation for limited parties in a manner that it cannot for full parties. *See* ORS 183.450(3) ("Persons appearing in a limited party status shall participate in the manner and to the extent prescribed by rule of the agency."); ORS 183.417(2) ("Agencies may adopt rules of procedure governing participation in contested cases by persons appearing as limited parties.").

The council concedes that the challenged rules are invalid if they affect the rights of *full* parties because, by allowing a full party to participate only on issues that that party raised at the public hearing, the rules would violate the APA rights of full parties to "respond and present evidence and argument on all issues properly before the presiding officer," ORS 183.417(1), and to cross-examine witnesses and submit rebuttal evidence, ORS 183.450(3).

By their terms, the challenged rules restrict the participation of "parties" and make no mention of "limited parties." *See* OAR 345-015-0083(2) (initial site certificate applications); OAR 345-027-0371(10)(a) (RFAs). As a result, the rules appear to restrict the participation of full parties and limited parties equally.

In response, the council argues that, although the challenged rules do not distinguish between full parties and limited parties, the rules would affect only limited parties. There are multiple steps to the council's argument. As an initial matter, the council contends that the rules impose no restrictions on the participation of certificate applicants or certificate holders. Thus, according to the council, the rules apply only to intervenors requesting to participate under ORS 183.310(7)(c), who may be either full parties or limited parties. The council then asserts that it has the authority to decide whether intervenors may participate as full parties or limited parties. And, finally, the council argues that the challenged rules designate all intervenors as limited

parties. Under that argument, because the rules assertedly do not apply to certificate applicants or holders, the rules should be understood as designating all other participants as limited parties and imposing restrictions only as to them.

Although petitioners dispute each step in that argument, we resolve this case by addressing only the last step—whether the challenged rules designate all intervenors as limited parties. The problem for the council is that the challenged rules do not say what the council says they say. They cannot plausibly be interpreted as designating anyone as a limited party.[3] The challenged rules observe no distinction whatsoever between parties and limited parties; in fact, the term "limited party" does not appear at all in either rule. We do not resolve here whether an agency may categorically designate certain persons as limited parties by rule.[4] We hold only that the challenged rules do not do that. As a result, the challenged rules can be read in only one way—as restricting the participatory rights of all parties, in a manner not allowed by the APA.

As a result, we conclude that OAR 345-015-0083(2) and OAR 345-027-0371(10)(a) exceed the council's statutory authority.

---

[3] The council has not argued that we owe deference to how it interprets its own rule. *See, e.g.*, *Oil Re-Refining Co. v. Environmental Quality Comm.*, 361 Or 1, 11, 388 P3d 1071 (2017) ("Within our framework for interpreting state regulations, this court ordinarily defers to an agency's interpretation of its own regulation if that interpretation is a plausible one and otherwise consistent with the law."). Even under a deferential standard of review, however, the council's interpretation would fail because it is not plausible given the text of the rules.

[4] Petitioners contend that, under the statutory definition of "party," agencies have no authority to designate a person as a limited party if that person requests to participate as a full party. *See* ORS 183.310(7)(c) ("Any person requesting to participate before the agency as a party or in a limited party status which the agency determines either has an interest in the outcome of the agency's proceeding or represents a public interest in such result."). Petitioners' argument calls into question an Oregon Department of Justice model rule that the council has adopted, which provides that "[a] petition to participate as a party may be treated as a petition to participate as a limited party." OAR 137-003-0005(8); *see also* OAR 345-001-0005(1) (the council adopting that model rule). Although a necessary step in the council's argument is that the council has the statutory authority to decide whether a person requesting to participate may do so as a full party or a limited party, the council presented no argument in support of that position in its briefing. And we do not resolve it here.

B. *Expanding a Site Boundary*

Petitioners also challenge a rule that functions as part of a scheme allowing site certificate holders to expand the boundaries of a site without a site certificate amendment. As noted above, the site certificate is the primary tool used by the council to regulate the construction and operation of large energy facilities in Oregon. The council has adopted a general rule governing when "an amendment to a site certificate is required." OAR 345-027-0350. Among other circumstances, the council requires an amendment when functional criteria, intended to assess the significance of the proposed changes, are met:

"[A]n amendment to a site certificate is required to ***

"(4)   Design, construct, or operate a facility in a manner different from the description in the site certificate, if the proposed change:

"(a)   Could result in a significant adverse impact that the Council has not addressed in an earlier order and the impact affects a resource or interest protected by an applicable law or Council standard;

"(b)   Could impair the certificate holder's ability to comply with a site certificate condition; or

"(c)   Could require a new condition or a change to a condition in the site certificate."

OAR 345-027-0350(4).[5]

Petitioners do not challenge that rule. Instead, they challenge a rule that allows the Department of Energy (not the council) to authorize a certificate holder to expand a "site boundary" under the functional criteria set out above:

"(1)   For a proposed change that would add area to the site boundary, the certificate holder must either:

---

[5] Under that rule, an amendment is also required to:

"(1) Transfer ownership of the facility or the certificate holder as described in OAR 345-027-0400;

"(2) Apply later-adopted laws as described in OAR 345-027-0390;

"(3) Extend the construction beginning or completion deadline as described in OAR 345-027-0385."

OAR 345-027-0350(1)-(3).

> "(a)   Submit a request for amendment to the Department; or
>
> "(b)   Submit an amendment determination request to the Department for a written determination of whether the proposed change requires an amendment under OAR 345-027-0350, and is not exempt under OAR 345-027-0353."

OAR 345-027-0357(1). Under that rule, if the department determines that the boundary expansion does not implicate the functional criteria set out in OAR 345-027-0350(4), then the department can authorize the certificate holder to expand a site boundary without a certificate amendment.

Petitioners contend that that rule violates statutory provisions that, according to petitioners, require certificate holders to obtain a certificate amendment for all site boundary expansions. Petitioners find support for that proposition in two statutes. Under ORS 469.320(1), "no facility shall be constructed or expanded unless a site certificate has been issued for the site thereof in the manner provided in ORS 469.300 to 469.563, 469.590 to 469.619, 469.930 and 469.992." That cross reference to various statutes includes a cross reference to the statute governing site certificate amendments, specifically, ORS 469.405(1), which provides that "[a] site certificate may be amended with the approval of the Energy Facility Siting Council."[6] Petitioners maintain that the challenged rule improperly would allow the department to authorize the construction of a facility in a location that is not included within the site certificate.

The council offers two arguments in response. First, the council argues that the real aim of petitioners' argument is not OAR 345-027-0357(1), but is, instead, the functional criteria set out in OAR 345-027-0350(4), which

---

[6] Within the statutes governing the council, "facility" refers to the "energy facility together with any related or supporting facilities," ORS 469.300(14), which includes, for example, power plants, pipelines, and storage facilities, ORS 469.300(11)(a). And "site" means "any proposed location of an energy facility and related or supporting facilities." ORS 469.300(25). Although "application" is not used in the relevant statutes, petitioners nevertheless contend that its definition is relevant because it identifies what the council approves when it grants a site certificate application. "Application" means "a request for approval of a *particular site or sites* for the construction and operation of an energy facility or the construction and operation of an additional energy facility upon a site for which a certificate has already been issued[.]" ORS 469.300(2) (emphasis added).

were not amended in Order EFSC 1-2020 and, therefore, are not subject to judicial review in this case.[7] According to the council, before it adopted the challenged rule, the council directly applied those criteria in determining whether actions such as boundary expansions would require site certificate amendments, and the only effect of the challenged rule is to change the process by requiring the certificate holder to present the expansion to the department in the first instance.

That argument fails. If there is no statutory authority for approving site expansions without a certificate amendment, then the challenged rule is not valid, and it is no answer to say that the council previously engaged in the same practice under a different rule.

The council also disagrees with petitioners' reading of the statutory requirements. The council concedes that an approved facility may be constructed only on an approved site. But the council contends that petitioners misconceive of the site boundary by imagining it as a metes-and-bounds description. The council notes that the statutory definition of "site" refers only to a "proposed location." ORS 469.300(25). As a result, the council requires certificate holders to provide only a description of the location, which might include maps showing its relationship to roads, water bodies, and other landmarks in a manner that is less specific than a metes-and-bounds description.

However, petitioners' argument does not depend on whether the site boundary is defined by a metes-and-bounds description or something less specific. The challenged rule applies when "a proposed change [] would add area to the site boundary," however specifically that site boundary is defined. OAR 345-027-0357(1). Even broadly defined site boundaries have limits. The challenged rule applies when those limits have been exceeded. And, critically, the rule allows department staff to expand a site boundary without a site certificate amendment.

---

[7] To facially challenge the council's rules, a petitioner must bring that challenge within 60 days of the rules becoming effective. ORS 469.490.

Because the challenged rule, OAR 345-027-0357(1), allows the department to authorize the expansion of a site boundary without a certificate amendment, and because there is no statutory authority for expanding a site boundary without a certificate amendment, we conclude that the challenged rule exceeds the council's statutory authority.

OAR 345-015-0083(2), OAR 345-027-0371(10)(a), and OAR 345-027-0357(1) are declared invalid. This decision will become effective when the time to file a petition for reconsideration under ORAP 9.25(1) expires, unless a petition for reconsideration is timely filed. Any timely petition for reconsideration will stay the effectiveness of this decision until the court acts on such petition.