194                 April 18, 2024                 No. 10

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Application for Site Certificate
for the Nolin Hills Wind Power Project.
## UMATILLA COUNTY,
*Petitioner,*

*v.*

## OREGON DEPARTMENT OF ENERGY,
Energy Facility Siting Council,
and Nolin Hills Wind, LLC,
*Respondents.*
(SC S070517)

En Banc

On judicial review of a final order of the Energy Facility
Siting Council.*

Argued and submitted January 11, 2024.

Wendie L. Kellington, Kellington Law Group, PC, Lake
Oswego, argued the cause and filed the brief for petitioner
on review Umatilla County.

Kate E. Morrow, Assistant Attorney General, Salem,
argued the cause and filed the brief for respondents on
review Oregon Department of Energy and Energy Facility
Siting Council. Also on the brief were Ellen F. Rosenblum,
Attorney General; Benjamin Gutman, Solicitor General;
and Jona J. Maukonen, Assistant Attorney General.

Rachel C. Lee, Stoel Rives, LLP, Portland, argued the
cause and filed the brief for respondent on review Nolin
Hills Wind, LLC.

Daniel Kearns, Reeve Kearns PC, Portland, filed the
brief for *amici curiae* Morrow County and The Eastern
Oregon Counties Association.

_____
* Judicial review of a final order of the Energy Facility Siting Council issued
August 31, 2023.

Daniel Kearns, Reeve Kearns PC, Portland, filed the brief for *amicus curiae* Blue Mountain Alliance.

GARRETT, J.

The final order of the Energy Facility Siting Council is affirmed.

**GARRETT, J.**

Umatilla County seeks judicial review of a final order of the Energy Facility Siting Council (the council) that granted a site certificate allowing Nolin Hills Wind, LLC, to construct a wind energy facility in the county. This case comes to us on direct review of the council's final order. *See* ORS 469.403(3) (providing for direct review by this court in such cases). The proposed facility includes, among other things, wind turbines, energy-transmission lines, and other related or supporting facilities. Umatilla County challenges the council's final order on the ground that the council should have required Nolin Hills to comply with a siting criterion—a two-mile setback between any turbine and a rural residence—that the county had recommended to the council under ORS 469.504(5). For the reasons set out below, we agree with the council that it has authority under ORS 469.504(1)(b)(B) to approve Nolin Hills's proposed energy facility notwithstanding the facility's failure to comply with that siting criterion. We therefore affirm the council's final order.

I. BACKGROUND

A. *Brief Overview of the Dispute*

As we will explain, state law sets out a complex framework that governs the council's approval of a site certificate. That framework makes the council responsible for the final determination whether a proposed facility complies with legal requirements and may be approved. However, it also provides a role for local governments, a role that includes recommending "applicable substantive criteria" (which we will explain later in this opinion) that bear on the council's determination. Central to this case is precisely what role those applicable substantive criteria play—specifically whether, in this case, as the county contends, those applicable substantive criteria should have been given dispositive effect, or whether, as the state respondents[1] contend, the council was authorized to approve Nolin Hills's application despite its failure to comply with all of those criteria. Two

---

[1] The council and the Department of Energy jointly filed an answering brief. They refer to themselves as the state respondents, and we do the same in this opinion.

subsidiary questions are presented by the parties' arguments. One is whether—assuming that the proposed facility *is* required to comply with the "applicable substantive criteria" recommended by the county—the two-mile setback requirement qualifies as one of those criteria. The state respondents argue that it does not. The other is whether the proposed facility passes through more than three land use zones. If it does, then it is undisputed that the council was authorized to approve the site certificate without considering the applicable substantive criteria at all. As we will explain, we conclude that the council was authorized to approve Nolin Hills's site certificate even if the proposed facility does not pass through more than three land use zones and even if it does not comply with all of the county's recommended substantive criteria. That conclusion obviates the need for us to resolve those two subsidiary issues.

B.  *The Council Generally*

The council is an independent body composed of seven volunteers appointed by the Governor and confirmed by the Senate. ORS 469.450. The council works hand in hand with the Department of Energy (DOE), which is charged with implementing the state's energy goals and policies. ORS 469.030. Although it is the council that ultimately issues the site certificate, each entity plays a role in the energy facility siting process.

As we recently explained in *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 368 Or 123, 125, 486 P3d 787 (2021), "[t]he council oversees the development of large energy facilities in Oregon, including electric power generating plants, high-voltage transmission lines, gas pipelines, and radioactive waste disposal sites, among other projects." *See* ORS 469.470 (listing powers and duties of the council); ORS 469.501 (requiring the council to adopt standards for siting, construction, operation, and retirement of energy facilities[2]); ORS 469.300(11)(a) (defining "energy facility"). The council carries out that task by issuing site certificates to developers. *See* ORS 469.320(1) ("[N]o facility shall be constructed or expanded unless a site certificate has been

---

[2] Those standards are adopted as DOE regulations. OAR chapter 345, divisions 22-26.

issued for the site."); ORS 469.503 (setting out requirements for the council's issuance of site certificate). To issue a site certificate, the council must find, among other things, that the proposed facility "complies with the statewide planning goals adopted by the Land Conservation and Development Commission." ORS 469.503(4).

A site certificate authorizes the holder to construct, operate, and retire a facility on an approved site, subject to the conditions that the council includes in the certificate. ORS 469.401(1); *see* ORS 469.300(26) (defining "site certificate"). To obtain a site certificate, an applicant first submits to the council a Notice of Intent to apply for a site certificate. ORS 469.330(1). DOE then issues a project order that identifies all statutes, administrative regulations, and other requirements that the applicant must satisfy to obtain the site certificate. ORS 469.330(3). The applicant submits its evidence of compliance with all project order requirements to the council in an Application for Site Certificate. *See* ORS 469.350(1) (requiring applicants to submit their application to the council).

DOE reviews the application, and, if the agency determines that an application is complete, it issues a draft proposed order, which triggers a period for public comment. *See* ORS 469.350(4) (requiring DOE to notify applicant when application is complete); ORS 469.370(1), (2) (requiring DOE to prepare a draft proposed order and the council to hold one or more public hearings as necessary). After reviewing the public comments, DOE issues a final proposed order recommending approval or rejection of the application. ORS 469.370(4). The council then conducts a contested case hearing on the application before an administrative law judge (ALJ). ORS 469.370(5). Only issues raised with sufficient specificity in the public comments may be raised in the contested case. ORS 469.370(3), (4). The ALJ issues a proposed contested case order, to which the parties may take exception. OAR 345-015-0085. The council then issues a final order approving or denying the application for a site certificate. ORS 469.370(7); OAR 345-015-0085(7), (8). Any party to the contested case may seek review in this court of the council's decision approving or rejecting the site certificate. ORS 469.403(2), (3).

C.	*Historical Facts*

		In September 2017, Nolin Hills filed a Notice of Intent to file an application for a site certificate for a proposed 350-MW wind energy facility, along with related or supporting facilities, including a 230-kV transmission line, to be located on approximately 44,900 acres in Umatilla County. The proposed wind facility and the transmission line as described in the Notice of Intent would be entirely on land that is zoned for exclusive farm use (EFU). The Notice of Intent stated that the wind energy transmission line would connect the wind facility to the proposed Bonneville Power Administration (BPA) Stanfield Substation, located about eight miles north of the "site boundary"—the outer perimeter of the acreage comprising the proposed facility.[3] That proposed transmission line would span 18 miles and is referred to as the "BPA Stanfield Route." The BPA Stanfield Route also would be entirely on EFU land.

		After Nolin Hills filed its Notice of Intent, DOE asked Umatilla County's Board of Commissioners (county board) to recommend "applicable substantive criteria"—a set of local land use rules and regulations to be used by the council to evaluate Nolin Hills's eventual application.[4]

---

[3] The term "site boundary" is defined in OAR 345-001-0010(31) and means "the perimeter of the site of a proposed energy facility, its related or supporting facilities, all temporary laydown and staging areas and all corridors and micrositing corridors proposed by the applicant."

[4] ORS 469.504(5) provides that, on request by DOE, the "special advisory group established under ORS 469.480" shall recommend to the council the "applicable substantive criteria" that will be used to evaluate a proposed facility. ORS 469.480 does not expressly define the term "special advisory group," but ORS 469.480(1) requires the council to "designate as a special advisory group the governing body of any local government within whose jurisdiction the facility is proposed to be located." Umatilla County had designated its county board as the special advisory group. The "applicable substantive criteria" that the special advisory group must recommend to the council are approval criteria based on "the affected local government's acknowledged comprehensive plan and land use regulations that are required by the statewide planning goals." ORS 469.504(1)(b)(A); *see also* OAR 345-022-0030(3) (providing same definition of "applicable substantive criteria"). "Acknowledgment" is defined in ORS 197.015(1) to mean that the Land Conservation and Development Commission [LCDC] has issued an order certifying that a comprehensive plan and land use regulations complies with the "goals," which, in turn, is defined in ORS 197.015(8) to mean "the mandatory statewide land use planning standards adopted by [LCDC] pursuant to ORS chapters 195, 196, 197 and 197A." In addition, OAR 345-015-0180(4)(b)(A) defines the phrase "applicable substantive criteria" to mean "the criteria and standards

The county board then timely recommended that the council apply several Umatilla County land use ordinances as applicable substantive criteria, including, as relevant here, Umatilla County Development Code 152.616(HHH)(6)(a)(3), which requires a two-mile setback between any wind turbine and rural residence on EFU-zoned land. The county had adopted that ordinance pursuant to ORS 215.283(2)(g), which allows the county to conditionally approve commercial utility facilities as non-farm uses on EFU-zoned land. The county board designated that ordinance as "Criterion 3" in its list of recommended applicable substantive criteria.

In February 2020, Nolin Hills submitted to DOE a preliminary application for a site certificate for the proposed wind energy facility and related facilities. That proposal was identical in all material respects to the proposal set out in the Notice of Intent. In November 2020, however, Nolin Hills submitted a revised preliminary application that increased the size of the facility to about 48,000 acres and added several additional features, including, as pertinent here, an alternative energy transmission route (that is, an alternative to the BPA Stanfield Route).[5] The alternative route, referred to as the Umatilla Electric Cooperative (UEC) Cottonwood Route, would connect the wind facility to the BPA transmission system via transmission lines to the UEC Cottonwood Substation. The UEC Cottonwood Route would span about 25 miles (seven miles longer than the BPA Stanfield Route). Whereas the BPA Stanfield Route would be located entirely on EFU land, the UEC Cottonwood Route would be located mostly on EFU land with small segments in two other land-use zones: Light Industrial (0.4 mile) and Rural Tourist Commercial (0.3 mile). In addition, part of the total acreage within the site boundary associated with the UEC Cottonwood Route is located within a fourth zone—Agri-Business (0.35 acre).

The county board provided timely comments on the preliminary application, asserting that the proposed facility does not comply with all of the applicable substantive

that the local government would apply in making all land use decisions necessary to site the proposed facility in the absence of a Council proceeding."

[5] The revised application also included solar energy facilities.

criteria. Specifically, the county board objected that the facility would not comply with Criterion 3 because several of the proposed wind turbine locations would be within two miles of numerous rural residences. Nolin Hills then submitted a second revised preliminary application; that proposal also did not comply with Criterion 3, which the county board pointed out in its comments.

In January 2022, Nolin Hills submitted its application. The application did not comply with Criterion 3, as it continued to include wind turbines that were less than two miles from rural residences. DOE issued a draft proposed order recommending that the council find that the proposed facility complies with all applicable requirements. The draft proposed order acknowledged that the facility would not comply with Criterion 3, but it concluded that Criterion 3 is not an "applicable substantive criterion." It also stated that, even if Criterion 3 were an applicable substantive criterion, the council was authorized to approve the proposed facility under ORS 469.504(1)(b)(B), so long as the council finds that the project "otherwise compl[ies] with the applicable statewide planning goals."

DOE then issued its final Proposed Order, in which it found that the proposed facility complies with all applicable substantive criteria. In so concluding, DOE determined that Criterion 3 is not an applicable substantive criterion, because, under ORS 469.504(1)(b)(A), applicable substantive criteria are land use regulations that are "required by the statewide planning goals," and no statewide planning goal requires a two-mile setback between a wind turbine and a residence.

Alternatively, DOE stated, even if Criterion 3 were an applicable substantive criterion, noncompliance with that criterion would not be fatal to the application, because, under ORS 469.504(5), if a proposed facility passes through more than three land use zones, the council has the option to evaluate the proposal against statewide planning goals instead of the applicable substantive criteria.[6] Noting that Nolin Hills's application included the possibility that the facility would use the UEC Cottonwood Route, which, it

_____

[6] We set out and discuss the text of ORS 469.504(5) later in this opinion.

stated, "passes through" more than three land use zones, DOE concluded that the failure to comply with Criterion 3 was not dispositive.

Finally, DOE stated that, even if Criterion 3 were an applicable substantive criterion as defined in ORS 469.504(1)(b)(A), *and* even if the proposed facility does *not* pass through more than three land use zones, the council could still approve the proposed facility under yet another provision, ORS 469.504(1)(b)(B), because the proposed facility otherwise complies with the applicable statewide planning goals.[7]

Umatilla County objected to DOE's Proposed Order. The county argued that, contrary to DOE's reasoning, the UEC Cottonwood Route does not pass through more than three land use zones; therefore, the applicable substantive criteria govern. The county further argued that, contrary to DOE's reasoning, Criterion 3 was one of those applicable substantive criteria. In the ensuing contested case proceeding, Umatilla County, DOE, and Nolin Hills each moved for summary determination. In May 2023, an ALJ issued a contested case order denying Umatilla County's motion, granting DOE's and Nolin Hills's motions, and proposing that the council issue a final order granting Nolin Hills's application. In the contested case order, the ALJ determined that the proposed facility complies with all applicable substantive criteria. Like DOE, the ALJ concluded that Criterion 3 is not an "applicable substantive criterion," because the two-mile setback required by the Umatilla County ordinance is not specifically required by the statewide planning goals. The ALJ further determined that, even if Criterion 3 were applicable, the proposed facility otherwise complies with applicable statewide planning goals.

The council issued its final order in August 2023. The final order incorporated DOE's Proposed Order and the ALJ's Contested Case Order, and it approved Nolin Hills's application.

---

[7] ORS 469.504(1)(b)(B) allows the council to approve a proposed facility notwithstanding its failure to comply with all applicable substantive criteria if the council determines that the facility "does otherwise comply with the applicable statewide planning goals, or that an exception" to the goals applies. We set out and discuss the text of ORS 469.504(1)(b) later in this opinion.

## II.   ANALYSIS

This court reviews final orders of the council for errors of law, abuses of agency discretion, and lack of substantial evidence in the record to support challenged findings of fact. *See Friends of Parrett Mountain v. Northwest Natural*, 336 Or 93, 96, 79 P3d 869 (2003) (so stating); *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 356, 121 P3d 1141 (2005) (same); ORS 469.403(6) (Supreme Court review same as Court of Appeals' review described in ORS 183.482); ORS 183.482(7), (8) (setting out those standards).

### A.   *Statutory Framework*

Before turning to the parties' contentions on appeal, we lay out the relevant statutes in detail.

ORS 469.503 sets out the requirements for approval of energy facility site certificates:

"In order to issue a site certificate, the [council] shall determine that the preponderance of the evidence on the record supports the following conclusions:

"(1)   The facility complies with the applicable standards [for facility siting, construction, operation, and retirement] or the overall public benefits of the facility outweigh any adverse effects on a resource or interest protected by the applicable standards the facility does not meet.

"(2)   * * * * * [8]

"(3)   Except as provided in ORS 469.504 for land use compliance and except for those statutes and rules for which the decision on compliance has been delegated by the federal government to a state agency other than the council, the facility complies with all other Oregon statutes and administrative rules identified in the project order, as amended, as applicable to the issuance of a site certificate for the proposed facility. * * *

"(4)   The facility complies with the statewide planning goals adopted by the Land Conservation and Development Commission [LCDC]."

Only ORS 469.503(4) is at issue in this case. That is, Umatilla County disputes only the council's determination

---

[8] Subsection (2) applies to fossil-fueled power plants and is not relevant here.

that the proposed facility complies with statewide planning goals notwithstanding its failure to comply with Criterion 3, the county rule requiring a two-mile setback between wind turbines and rural residences.

A different statute, ORS 469.504, sets out the circumstances under which a proposed facility "shall be found in compliance" with statewide planning goals under ORS 469.503(4). Of the various subsections in ORS 469.504, three are most relevant here: subsections (1), (4), and (5). First, subsection (4) provides that an applicant for a site certificate "shall elect whether to demonstrate compliance with the statewide planning goals under [ORS 469.504(1)(a) or ORS 469.504(1)(b)]." ORS 469.504(4). In other words, the circumstances in which the proposed facility "shall be found in compliance" depend initially on the applicant's choice between two alternative ways to proceed, which are set out in subsection (1).

The first of those statutory alternatives, ORS 469.504(1)(a), provides that the council must find the proposed facility to be in compliance with statewide planning goals if "[t]he facility has received local land use approval under the acknowledged comprehensive plan and land use regulations of the affected local government." In other words, ORS 469.504(1)(a) allows the applicant to elect to demonstrate that the proposed facility complies with local land use requirements to the satisfaction of the local government, in which case, if the applicant is successful, the council must conclude that the facility complies with statewide planning goals.

In this case, Nolin Hills did not seek local land use approval under Umatilla County's acknowledged comprehensive plan, and it did not elect to demonstrate compliance under ORS 469.504(1)(a). Rather, it elected to demonstrate compliance under the second statutory alternative, ORS 469.504(1)(b), which is considerably more complex.

When an applicant elects to demonstrate compliance under ORS 469.504(1)(b), then the way in which the council must proceed depends on the particular circumstances presented by the application. That statute provides

that the proposed facility must be found in compliance with statewide planning goals if the council determines that:

"(A)   The facility complies with applicable substantive criteria from the affected local government's acknowledged comprehensive plan and land use regulations *that are required by the statewide planning goals* and in effect on the date the application is submitted, and with any Land Conservation and Development Commission administrative rules and goals and any land use statutes that apply directly to the facility ***;

"(B)   For an energy facility or a related or supporting facility that *must* be evaluated against the applicable substantive criteria pursuant to subsection (5) of this section, that the proposed facility does not comply with one or more of the applicable substantive criteria *but does otherwise comply with the applicable statewide planning goals*, or that an exception to any applicable statewide planning goal is justified under subsection (2) of this section; or

"(C)   For a facility that the council *elects* to evaluate against the statewide planning goals pursuant to subsection (5) of this section, that the proposed facility complies with the applicable statewide planning goals or that an exception to any applicable statewide planning goal is justified under subsection (2) of this section."

ORS 469.504(1)(b) (emphases added). As explained in greater detail below, the italicized terms are important to the parties' arguments in this case.

The third subsection relevant here is subsection (5), which is cross-referenced in subparagraph (1)(b)(B), as set out above. ORS 469.504(5) provides:

"Upon request by the State Department of Energy, the special advisory group established under ORS 469.480 shall recommend to the council, within the time stated in the request, the *applicable substantive criteria* under subsection (1)(b)(A) of this section. If the special advisory group does not recommend applicable substantive criteria within the time established in the department's request, the council may either determine and apply the applicable substantive criteria under subsection (1)(b) of this section or determine compliance with the statewide planning goals under subsection (1)(b)(B) or (C) of this section. If the special

> advisory group recommends applicable substantive criteria for an energy facility * * * or a related or supporting facility *that does not pass through more than one local government jurisdiction or more than three zones in any one jurisdiction, the council shall apply the criteria recommended by the special advisory group.* If the special advisory group recommends applicable substantive criteria for an energy facility * * * or a related or supporting facility that *passes through more than one jurisdiction or more than three zones in any one jurisdiction*, the council shall review the recommended criteria and determine whether to evaluate the proposed facility against the applicable substantive criteria recommended by the special advisory group, against the statewide planning goals or against a combination of the applicable substantive criteria and statewide planning goals. * * *"

(Emphases added.) Thus, subsection (5) concerns what the council is required to do with the "applicable substantive criteria" that may have been recommended by the "special advisory group," which, in this case, was the Umatilla County board.

The county and the state respondents describe subsection (5) as containing different "tracks," a term that we adopt here.[9]

Track 1, the second sentence in subsection (5), applies if the special advisory group does *not* timely recommend applicable substantive criteria. In that situation, the council "either" may determine the applicable substantive criteria itself and apply those criteria, or it may "determine compliance with the statewide planning goals under subsection (1)(b)(B) or (C)." Here, the special advisory group—the Umatilla County board—timely recommended applicable substantive criteria, so track 1 undisputedly does not apply.

---

[9] We recognize that we are using the shorthand term "tracks" in this opinion differently than did this court in *Save Our Rural Oregon*. In that case, the court referred to the three subparagraphs in ORS 469.504(1)(b) as "tracks." 339 Or at 363. However, there was no need to refer to those three subparagraphs as "tracks" in *Save Our Rural Oregon*, because they are easily referred to and identified by their citations. By contrast, the descriptions of the ways the council is to use the applicable substantive criteria in the three circumstances set out in ORS 469.504(5) are all part of one section and are not separately identifiable by citation. For ease of reference, therefore, we refer to those three circumstances as "tracks."

Track 2, the third sentence in subsection (5), applies if the special advisory group timely recommends applicable substantive criteria for a facility or a related or supporting facility that *does not* pass through more than one jurisdiction or more than three land use zones. In that circumstance, the council "shall apply" the special advisory group's recommended applicable substantive criteria.

Finally, track 3, the fourth sentence in subsection (5), applies if the special advisory group recommends applicable substantive criteria for an energy facility or related or supporting facility that *does* pass through more than one jurisdiction or more than three zones in any one jurisdiction. In that circumstance, the council must review the recommended criteria and "determine whether" to evaluate the proposed facility against the recommended criteria, against the statewide planning goals, or against a combination of the two.

In this case, the council evaluated Nolin Hills's application under ORS 469.504(1)(b)(A), concluding that the proposed facility complies with all "applicable substantive criteria from the affected local government's acknowledged comprehensive plan and land use regulations that are required by the statewide planning goals." As discussed, it based that conclusion on its finding that, although the proposed facility does not comply with Criterion 3, the two-mile setback rule, that criterion is not an "applicable substantive criterion" because it is not "required by the statewide planning goals."

In addition, the council made "the separate and alternative findings" that, even if Criterion 3 *were* an applicable substantive criterion, "the facility meets the Land Use standard under ORS 469.504(1)(b)(B) and ORS 460.504(5)." The council went on to state that, as a first alternative basis for approving the proposed facility, the council found that track 3 applied because the UEC Cottonwood Route passes through more than three land use zones, and therefore the council was entitled to, and did, evaluate the proposed facility against a combination of the applicable substantive criteria and the statewide planning goals. In addition, as a second alternative basis for its ruling, the council stated that it had

evaluated the proposed facility under ORS 469.504(1)(b)(B), which allows it to approve a proposed facility that does not comply with all the local government's applicable substantive criteria if it "does otherwise comply with the applicable statewide planning goals." The council considered all the statewide planning goals that it considered to be applicable to the proposed facility, and it concluded that the proposed facility did comply with them.

B.   *The Parties' Arguments on Review*

       On review, the core of Umatilla County's argument is that the council erred in approving Nolin Hills's application because the proposed facility includes multiple wind turbines that are less than two miles from rural residences and thus does not comply with Criterion 3. That argument has three main parts.

       First, the county argues that the council erred in concluding that Criterion 3 is not "required by the statewide planning goals" and therefore is not among the "applicable substantive criteria" that the council must consider under ORS 469.504(1)(b)(A). The county asserts that Criterion 3 is a conditional land use standard that it adopted in conformance with Statewide Planning Goal 2, OAR 660-015-0000(2). Among other things, Statewide Planning Goal 2 requires local governments to adopt a "land use planning process and policy framework" that would serve as a "basis for all decision[s] and actions related to use of land." According to the county, Criterion 3 is a part of that framework and addresses issues relevant to several statewide planning goals, and, because Criterion 3 was adopted pursuant to Goal 2, it is "required by" Goal 2.

       Second, the county argues that the council erred, as a matter of fact and as a matter of law, in concluding that the UEC Cottonwood Route "passes through" more than three land use zones. That is important because, for facilities that pass through more than three land use zones, ORS 469.504(5) allows the council to evaluate the proposed facility against the applicable substantive criteria, against the statewide planning goals, or against a combination of the two. As a result, the proposed facility's failure to comply

with Criterion 3 would not be a reason to deny the application.

Third, Umatilla County argues that, because Criterion 3 *is* an applicable substantive criterion, and because the proposed facility does *not* pass through more than three zones, the council was required to analyze Nolin Hills's application under track 2 in ORS 469.504(5). The county argues that that is important because track 2 provides that the council "shall apply" the applicable substantive criteria. In the county's view, that wording means that the council was required to apply Criterion 3 and must deny Nolin Hills's application for a site permit because the proposed facility violates the two-mile setback requirement. Put another way, Umatilla County contends that the statutory directive in track 2 that the council "shall apply" the local criteria necessarily means that, if the proposed facility does not comply with the local criteria, then the council may not approve the application.

The state respondents argue that, even if track 2 in ORS 469.504(5) does apply for the reasons that the county contends—that is, even assuming that Criterion 3 is one of the applicable substantive criteria, and further assuming that the proposed facility does not pass through more than three zones—the council was nevertheless authorized to approve the application under ORS 469.504(1)(b)(B). Again, that provision applies when a proposed facility "must be evaluated against" the applicable substantive criteria, and it allows the council to approve a facility that does not comply with all the applicable substantive criteria if the facility "does otherwise comply with the applicable statewide planning goals."

In response to that argument by the state respondents, the county contends that ORS 469.504(1)(b)(B) applies only to track 1—situations in which the special advisory group does *not* recommend applicable substantive criteria to DOE and the council then exercises its option to determine applicable substantive criteria itself. Moreover, Umatilla County argues, nothing in track 2 suggests that the legislature intended for ORS 469.504(1)(b)(B) to override the directive in track 2 that the council "shall apply" Umatilla

County's applicable substantive criteria. On that point, the county argues that the state respondents' interpretation of ORS 469.504(1)(b)(B)—that it gives broad authority to the council to grant a site certificate for a proposed facility that falls within track 2, regardless of compliance with local criteria—cannot be correct, because that would make it pointless for ORS 469.504(5) to differentiate between proposed facilities that pass through more than three land use zones and those that do not: In each case, the council would be free to disregard the proposed facility's failure to comply with all applicable substantive criteria and simply evaluate the proposed facility against the statewide planning goals.

Although, as is apparent from the foregoing, the parties dispute numerous points of law and fact in this appeal, we conclude that it is unnecessary to resolve most of those disputes. Specifically, we need not decide whether Criterion 3 is "required by the statewide planning goals" and is therefore an applicable substantive criterion; nor need we decide whether the council erred as a matter of fact or of law in concluding that the proposed facility passes through more than three land use zones. That is because, even assuming for purposes of this opinion that Umatilla County is correct as to both those points—and that the council, therefore, was required to evaluate the proposed facility under track 2 in ORS 469.504(5)—we conclude that ORS 469.504(1)(b)(B) authorized the council to grant Nolin Hills's application for a site permit for the proposed wind facility notwithstanding the failure of the proposed facility to comply with Criterion 3.

C.  *ORS 469.504(1)(b)(B) Applies to Track 2 in ORS 469.504(5).*

We review the council's interpretation of ORS 469.504 for errors of law. In doing so, we attempt to discern the legislature's intent by employing the framework for statutory construction set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009): We examine the text and context of the relevant statute, and we consider legislative history to the extent that we find it useful to our analysis.

ORS 469.504(1)(b)(B) confers broad authority on the council. It provides that the council may approve a proposed

facility if it determines that the facility "does not comply with one or more of the applicable substantive criteria but does otherwise comply with the applicable statewide planning goals, or that an exception to any applicable statewide planning goal is justified under subsection (2) of this section." Thus, if that provision is applicable, the proposed facility need not comply with all local recommended criteria, and it need not even comply with all statewide planning goals if the council determines that an exception to a goal is justified. However, by its terms, that provision's applicability is limited to situations when "an energy facility or a related or supporting facility * * * *must be evaluated* against the applicable substantive criteria pursuant to [ORS 469.504(5)]." (Emphasis added.) The statute thus appears to contemplate that a situation may arise in which a proposed facility "must be evaluated against" the applicable substantive criteria, yet may still be approved even if it does not *comply* with one or more of those criteria. According to the state respondents, the statute means exactly that.

In response, Umatilla County argues that ORS 469.504(1)(b)(B) does not apply to this case, because this was not a circumstance in which a facility "must be evaluated" against the "applicable substantive criteria" pursuant to ORS 469.504(5). The county makes several points in support of that contention, none of which we find persuasive.

According to the county, the only time that the council "must" evaluate the proposed facility against the "applicable substantive criteria" is when track 1 applies—*i.e.*, when the special advisory group has not recommended applicable substantive criteria and the council decides to determine them itself. To repeat, track 1 provides:

> "If the special advisory group does not recommend applicable substantive criteria within the time established in the department's request, the council may either determine and apply the applicable substantive criteria under subsection (1)(b) of this section or determine compliance with the statewide planning goals under subsection (1)(b)(B) or (C) of this section."

ORS 469.504(5).

We agree with the county that, if the special advisory group has not timely recommended applicable substantive criteria for a proposed facility and the council decides to determine and apply them itself as allowed in track 1, that is a situation in which the proposed facility "must be evaluated against the applicable substantive criteria" pursuant to subparagraph (1)(b)(B). Indeed, this court said as much in *Save Our Rural Oregon*. In that case, the special advisory group did not timely recommend applicable substantive criteria, and the council determined the local criteria itself by looking at the local land use comprehensive plan and zoning ordinances and directly applicable statutes and rules. 339 Or at 362-63. This court held that, once the council opted to "determine and apply the applicable substantive criteria" under track 1, "the facility was one that 'must' be evaluated against the applicable substantive criteria [and therefore] ORS 469.504(1)(b)(B) was an appropriate mechanism for reviewing the proposed facility." *Id*. at 368 n 10.

But it does not follow from *Save Our Rural Oregon* that track 1 is the only circumstance in which the council must evaluate a proposed facility against the applicable substantive criteria. The wording of track 2 arguably suggests even more clearly a legislative intent to make ORS 469.504(1) (b)(B) an "appropriate mechanism" for review. Again, track 2 states that, where a proposed facility does not pass through more than three land use zones, the council "*shall* apply the criteria recommended by the special advisory group." ORS 469.504(5) (emphasis added). "Shall," like "must," is a word denoting an obligation or a command. *See Preble v. Dept. of Rev.*, 331 Or 320, 324, 14 P3d 613 (2000) ("'Shall' is a command: it is 'used in laws, regulations, or directives to express what is mandatory.'" (Citation omitted.)); *Stanley, Adm. v. Mueller*, 211 Or 198, 208, 315 P2d 125 (1957) ("Words or phrases which are generally regarded as making a provision mandatory, include 'shall,' and 'must.'"). The phrase "shall apply the [applicable substantive] criteria," then, appears to make the proposed facility one that "must be evaluated" against the applicable substantive criteria.

Umatilla County argues that that is not correct, because "evaluate" in ORS 469.504(1)(b)(B) means something

different than "apply" in track 2. That is, Umatilla County argues that, under track 2, the council is required to *apply* the criteria, but *evaluation* is not required. The county does not, however, explain how such a distinction could make practical sense. Again, ORS 469.504(1)(b)(B) is triggered when, under ORS 469.504(5), the council must evaluate the proposed facility "against the applicable substantive criteria." It is difficult to understand how the council, acting pursuant to track 2, could "apply" the applicable substantive criteria to a proposed facility without also evaluating the proposed facility against those criteria, and the county does not explain how that could be so.

Umatilla County also argues that applying ORS 469.504(1)(b)(B) to track 2 would make a nullity of the command in track 2 that the council "shall apply" the applicable substantive criteria. That is, according to Umatilla County, it does not make sense to interpret the statutory scheme in a way that requires the council, acting pursuant to track 2, to "apply" the substantive criteria, but then allows the council to use ORS 469.504(1)(b)(B) to effectively disregard those criteria by approving a project that does not comply with them. That seeming anomaly, according to the county, is a reason to conclude that ORS 469.504(1)(b)(B) does not apply to track 2.

We disagree. The unspoken premise underlying the county's argument is that the requirement in track 2 that the council "shall apply" the recommended substantive criteria means that a proposed facility must be rejected if it does not comply with those criteria. That is a possible interpretation of "shall apply," but it is not the only plausible one. "Apply" means "to make use of as suitable, fitting, or relevant" or "to put to use[,] esp. for some practical purpose." *Webster's Third New Int'l Dictionary* 105 (unabridged ed 2002). Under that ordinary meaning, one might "apply" the applicable substantive criteria in evaluating a proposed facility—meaning, "make use of" them by examining the degree to which the facility is consistent with those criteria—even if one may also approve a proposed facility that does not comply with one or more of them. Contrary to the county's argument, such an interpretation does not render

the local criteria irrelevant. Rather, it requires the council to consider those criteria in determining whether to ultimately approve a proposed facility.

Finally, the county points to two other land use statutes, ORS 215.283(2)(g) and ORS 215.190, as context for its interpretation of ORS 469.504(1)(b)(B). ORS 215.283(2)(g) requires county approval of commercial utility facilities for the purpose of generating power for public use on high-value farmland in areas zoned for exclusive farm use.[10] ORS 215.190 prohibits, among other things, construction of any structure in violation of an ordinance or regulation.[11] The county argues that those statutes mean that a facility such as Nolin Hills proposes can be approved only if it meets local conditional use standards, and if the facility does not meet those standards, the application must be denied. According to Umatilla County, it follows that ORS 469.504(1)(b)(B) cannot apply to track 2.

Again, we disagree. ORS 469.504(7) alleviates any tension between ORS 469.504, on the one hand, and ORS 215.283(2)(g) and ORS 215.190, on the other. That subsection specifically contemplates council approval of a facility that violates local land use rules:

"On or before its next periodic review, each affected local government shall amend its comprehensive plan and land use regulations as necessary to reflect the decision of the council pertaining to a site certificate or amended site certificate."

ORS 469.504(7). In other words, if the council issues a site certificate for a proposed facility that does not comply with all of a local government's land use regulations adopted

---

[10]  ORS 215.283(2)(g) provides:

"(2) The following nonfarm uses may be established, subject to the approval of the governing body or its designee in any area zoned for exclusive farm use ***":

"*****

"(g) Commercial utility facilities for the purpose of generating power for public use by sale."

[11]  ORS 215.190 provides:

"No person shall locate, construct, maintain, repair, alter, or use a building or other structure or use or transfer land in violation of an ordinance or regulation authorized by [various land use statutes]."

pursuant to ORS 215.283(2)(g) and ORS 215.190, including those recommended as applicable substantive criteria in an energy facility siting proceeding, the county *must amend* its conflicting regulations to conform to the site certificate and issue any permits necessary for the construction of the facility.[12] Notably, nothing in subsection (7) limits its applicability to proposed facilities approved under tracks 1 and 3.[13] Once the local government amends its regulations to conform to the site certificate, there is no longer a conflict between a site certificate and the local conditional use standards.

Our analysis thus far points to the conclusion that ORS 469.504(1)(b)(B) applies to track 2 and that it authorizes the council to issue a site certificate for a proposed facility notwithstanding that the proposed facility does not comply with all applicable substantive criteria, so long as it "does otherwise comply with the applicable statewide planning goals." That interpretation of the statute is consistent

---

[12] As the council's final order states, "[I]t is the [c]ounty that must amend its comprehensive plans and regulations to be consistent with the [council's] decision, not vice versa."

[13] We also observe that, if Umatilla County were correct that ORS 215.283(2)(g) and ORS 215.190 mean that a proposed facility that does not comply with local land use regulations must be denied, then it would not matter whether track 2 or track 3 applied, because the council would never be able to approve a proposed facility that did not comply with all of the local government's applicable substantive criteria. But the legislature has expressly authorized facilities to obtain site certificates without the local governing body's approval in ORS 469.504(1)(b), and both ORS 469.504(1)(b)(B) and (C) clearly contemplate approval when a facility does not comply with all applicable substantive criteria. As we have discussed, ORS 469.504(1)(b)(B) does so expressly, but ORS 469.504(1)(b)(C) also applies implicitly when a facility does not comply with all applicable substantive criteria. That subparagraph applies when the council "elects to evaluate [a proposed facility] against the statewide planning goals" and clearly applies to track 3, which applies to a proposed facility that passes through more than three land use zones, because only track 3 gives the council that option. Track 3 requires the council to review the recommended criteria and then determine whether to evaluate the proposed facility against the recommended criteria, against the statewide planning goals, or against a combination of the two. Obviously, if the council chooses the first option—if it determines to evaluate the proposed facility against the applicable substantive criteria—and it further determines that the facility fully complies with the applicable substantive criteria, then the council can approve the proposed facility under ORS 469.504(1)(b)(A). But ORS 469.504(1)(b)(C) would apply both when the council elects to evaluate the proposed facility under the statewide planning goals alone and when it elects to evaluate the facility against a combination of the applicable substantive criteria and the statewide planning goals, having determined that the proposed facility *does not* comply with all of the applicable substantive criteria.

with the overarching goal of the energy facility siting process: to ensure that energy facilities comply with Oregon's statewide planning goals. ORS 469.503(4). We disagree with Umatilla County that that interpretation makes a nullity of the different treatment in ORS 469.504(5) for proposed facilities that pass through more than three land use zones and those that do not. Rather, our interpretation reflects a legislative intent to ensure that local government interests are given robust consideration, while at the same time giving the council ultimate decision-making authority to approve proposed facilities that comply with statewide planning goals.

D.  *The Legislative History Confirms Our Interpretation of ORS 469.504.*

The legislative history of ORS 469.503 and ORS 469.504 confirms, generally, our understanding that the legislature intended, in ORS 469.504(1)(b), to provide a role for local land use regulations in the energy facility siting process while making clear that the council, and not the local government, makes the ultimate determination whether to issue a site certificate for a proposed facility.[14] In particular, it confirms our understanding of the interrelationship between ORS 469.504(1)(b)(B) and track 2, and it reveals that, although ORS 469.504(5) provides in track 2 that the council "shall apply" the local criteria, the legislature did not intend to require compliance with all local criteria as a prerequisite for issuance of a site certificate for facilities evaluated under track 2.

The statutes setting requirements for approval of energy facility site certificates and facility compliance with statewide planning goals, ORS 469.503 and ORS 469.504, began to take their present form in 1993. In that year, the legislature repealed the list of standards, set out in *former* ORS 469.500 and *former* ORS 469.510, that the council was required to adopt governing the safety, siting, construction, and operation of thermal power plants and nuclear

---

[14] As discussed, there is one exception: the council cedes its authority to the affected local government when the applicant elects to demonstrate compliance with the statewide planning goals by seeking approval from the local government under its acknowledged comprehensive plan and land use regulations. ORS 469.504(1)(a), (4).

installations, and it enacted new standards for the siting, construction, operation, and retirement of "energy facilities."[15] Or Laws 1993, ch 569, §§ 22-23. The 1993 bill, as enacted, reflected the legislature's overarching concern that proposed facilities comply with statewide planning goals, and it clarified the ways in which the council could make that determination.[16] *Compare former* ORS 469.503(1)(c) (1993), *renumbered as* ORS 469.503(4) (1997) (to issue a site certificate, the council shall determine by a preponderance of the evidence that "[t]he facility complies with the statewide planning goals adopted by the Land Conservation and Development Commission"), *with former* ORS 469.510 (1991), *repealed by* Or Laws 1993, ch 569, § 21 (containing no provision regarding land use or statewide planning goals).

Like ORS 469.504(1)(a) and (b) today, *former* ORS 469.503 (1993) anticipated two types of circumstances in which a proposed facility could or must be found in compliance with statewide planning goals: where the applicant had sought and received local land use approval for the proposed facility, *former* ORS 469.503(2)(a) (1993), and where the applicant had not sought local land use approval and instead asked the council to make the determination, *former* ORS 469.503(2)(b) (1993). *Former* ORS 469.503(2)(b) (1993), in turn, set out two circumstances in which the council was required to find that a proposed facility was in compliance with the statewide planning goals: (1) when the proposed facility complied with all the local government's applicable substantive criteria, as well as LCDC's rules and goals and any applicable land use statutes (*former* ORS 469.503(2)(b) (A) and (B) (1993)), and (2) when the proposed facility "[did] not comply with the applicable local government criteria," but the council found that the proposed facility did "otherwise comply with the statewide planning goals," (*former* ORS 469.503(2)(b)(C) (1993)). Further, *former* 469.503(6)

---

[15] The definition of "energy facility" covered more types of facilities than merely thermal power plants and nuclear installations; it covered any electric power generating plant with a generating capacity of 25 megawatts or more. *Former* ORS 469.300(10) (1993). That definition is substantially identical to the definition of "energy facility" set out in ORS 469.300(11)(a).

[16] As enacted in 1993, the provisions of the statute that are analogous to those found today in ORS 469.503 and ORS 469.504 all were found in *former* ORS 469.503 (1993).

(1993) provided, "In accordance with subsection (2)(b) of this section, the council *shall apply* the substantive criteria recommended by the special advisory group." (Emphasis added.)

The original wording of *former* ORS 469.503(6) (1993) shows that the council was required to "apply" the local criteria in both circumstances set out in *former* ORS 469.503(2)(b) (1993)—it "shall apply" them. If the council applied the local criteria and found that the proposed facility complied with them, then it was required to find that the proposed facility was in compliance with the statewide planning goals and approve the site certificate. However, it also could approve the site certificate if it determined that the proposed facility did *not* comply with the local criteria but that it "does otherwise comply with the statewide planning goals." Thus, *former* ORS 469.503 (1993) reflects not only a legislative intent to allow the council to approve proposed facilities that do not comply with the applicable substantive criteria, it also shows that the legislature intended the phrase "shall apply" to be understood as we interpret it here: The phrase directs the council to consider the local criteria, but it does not require the council to reject a proposed facility simply because it does not comply with a local criterion.[17]

Nothing in the later amendments to that statute suggests a different legislative intent. In 1995, the legislature considered a bill to amend *former* ORS 469.503 (1993)—SB 951. As introduced, SB 951 would have allowed the council to consider compliance with the statewide planning goals without first considering compliance with the local criteria. *See* Exhibit D, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, April 10, 1995 (proposed amendments). Many stakeholders, including DOE, opposed those amendments on the ground that they would render local criteria unnecessary to the

---

[17] This interpretation is consistent with the written statement of then-Senator Joyce Cohen, equating "applying" with "considering." Senator Cohen stated that, in the proposed amendments to *former* ORS 469.503 (1993), "we have made sure that the local governments['] comprehensive plans will be considered by the Siting Council." Exhibit A, House Committee on Natural Resources, SB 1016, June 29, 1993 (accompanying testimony of Senator Joyce Cohen).

council's determination. *See* Exhibit H, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, Apr 10, 1995 (accompanying testimony of DOE Acting Director John Savage) (opposing proposed amendments because the bill would allow the council "to make a determination of consistency with statewide planning goals without considering local government plans"); *see also* Exhibit F, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, April 10, 1995 (accompanying testimony of the council's Vice Chair Terry Edvalson) ("[The bill] allows developers to ignore local comprehensive plans and zoning ordinances, and instead apply the broader state land use goals to demonstrate land use compliance."); Tape Recording, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, Apr 10, 1995, Tape 71, Side B (statement of Senior Staff Associate for the League of Oregon Cities Jane Cummins) (the League of Oregon Cities opposed "language which allow[ed] the local plan criteria to be ignored").

Ultimately, the legislature amended *former* ORS 469.503 (1993) to repeal *former* ORS 469.503(2)(b)(C) (1993) and replace it with the following two subparagraphs:

> "(C)   For an energy facility or a related or supporting facility that must be evaluated against the applicable substantive criteria pursuant to subsection (6) of this section, that the proposed facility does not comply with one or more of the applicable substantive criteria but does otherwise comply with the applicable statewide planning goals, or that an exception to any applicable statewide planning goal is justified under subsection (3) of this section; or

> "(D)   For a facility that the council elects to evaluate against the statewide planning goals pursuant to subsection (6) of this section, that the proposed facility complies with the applicable statewide planning goals or that an exception to any applicable statewide planning goal is justified under subsection (3) of this section."

Or Laws 1995, ch 505, § 21. Those provisions are identical in all material respects to the current statute, ORS 469.504(1)(b)(B) and (C). In addition, the legislature amended *former* ORS 469.503(6) (1993) to include two additional "tracks" now present in ORS 469.504(5). That is, in addition to track

1, which applies when the special advisory group does not recommend applicable substantive criteria (and which was already a part of *former* ORS 469.503(6) (1993)), *former* ORS 469.503(6) (1995) included the following:

> "If the special advisory group recommends applicable substantive criteria for an energy facility \*\*\* or a related or supporting facility that does not pass through more than one local government jurisdiction or more than three zones in any one jurisdiction, the council shall apply the criteria recommended by the special advisory group. If the special advisory group recommends applicable substantive criteria for an energy facility \*\*\* or a related or supporting facility that passes through more than one jurisdiction or more than three zones in any one jurisdiction, the council shall review the recommended criteria and determine whether to evaluate the proposed facility against the applicable substantive criteria recommended by the special advisory group, against the statewide planning goals or against a combination of the applicable substantive criteria and statewide planning goals."

Or Laws 1995, ch 505, § 21. That wording is identical in all material respects to the second and third tracks that now appear in ORS 469.504(5). Notably, *former* ORS 469.503(6) (1995) continued to provide that the council "shall apply" the local criteria, although that directive was then limited to circumstances in which the proposed facility did not pass through more than one jurisdiction or more than three land use zones in any one jurisdiction.

There is little explanation in the legislative history as to why the legislature concluded that those particular amendments were necessary.[18] However, DOE did not object

---

[18] The legislative history suggests that, in differentiating between proposed facilities that pass through more than one jurisdiction or more than three land use zones and those that do not, the legislature was attempting to address "problems associated with the siting of transmission lines and pipelines that go through multiple zones and multiple jurisdictions." Exhibit B, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, Apr 10, 1995 (accompanying testimony of Margaret D. Kirkpatrick). Kirkpatrick explained that, under current law, it was unclear how "multiple provisions of different zoning ordinances and comprehensive plans come into play when you have a large linear facility" that goes through multiple zones or jurisdictions. Tape Recording, Senate Committee on Agriculture, Natural Resources and Environment, SB 951, Apr 10, 1995, Tape 70, Side A. Tracks 2 and 3 appear to be a compromise that requires the council to consider the applicable substantive criteria when the

to the proposed amendments and, in a section-by-section analysis of SB 951, explained that the proposed amendments

> "allow the [council] to evaluate the land use impacts of a facility under the statewide planning goals rather than local land use criteria if: (i) the relevant local government fails to provide [the council] with the applicable local criteria; (ii) [the council] finds that one or more of the local criteria are not met; or (iii) the facility passes through more than one jurisdiction or more than three zoning districts in one jurisdiction."

Exhibit E, House Legislative Rules Committee, SB 951, May 17, 1995 (DOE section-by-section analysis of SB 951). In addition, in a memorandum submitted with that section-by-section analysis, a lawyer for DOE stated that "[t]he existing [land use] system is maintained, except that the council is authorized—but not required—to apply the statewide land use goals directly (rather than applying the applicable substantive criteria from the local government)" in the three circumstances set out above. *Id*. (memorandum of Assistant Attorney General Meg Reeves).[19]

The legislative history pertaining to the 1995 amendments, therefore, confirms that the legislature intended to allow the council to apply the statewide planning goals rather than the local applicable substantive criteria for a proposed facility that does not comply with one or more of the applicable substantive criteria. In addition, nothing in the legislative history suggests that the 1995 legislature intended the phrase "shall apply" to have a different meaning than it had in the 1993 version of the statute.

---

proposed facility does not pass through more than one jurisdiction or more than three land use zones but allows the council to elect to apply only the statewide planning goals for a facility that does pass through more than one jurisdiction or more than three land use zones. However, the legislative history does not shed light on precisely what the legislature intended in using the words "must be evaluated" in ORS 469.504(1)(b)(B) and "elects to evaluate" in ORS 469.504(1)(b)(C).

[19] Subsequent amendments did not change the statute in any material way. In 1997, the legislature moved the provisions governing the council's determination of a proposed facility's compliance with statewide planning goals, without substantive change, from *former* ORS 469.503 (1993) to ORS 469.504. *See* Or Laws 1997, ch 428, § 5; Exhibit F, Senate Livability Committee, HB 3283, May 13, 1997 (section-by-section analysis of HB 3283). ORS 469.504 was subsequently amended in 1999, 2001, 2003, and 2005 in ways that do not affect our analysis of this case.

E.   *Umatilla County Has Not Shown that the Proposed Facility Fails to Comply with the Applicable Statewide Planning Goals.*

We turn to address Umatilla County's final argument: that the council erred in concluding that the proposed facility "otherwise compl[ies] with the applicable statewide planning goals." Umatilla County argues that Goal 2 applies to the proposed facility and "requires that *all* state agency actions respecting land use comply with the comprehensive plans of local governments," and that includes their implementing ordinances. It follows, according to Umatilla County, that the facility's failure to comply with Criterion 3 necessarily means that it does not comply with Goal 2.[20]

The county's argument is untenable. It is true that Goal 2 states that, in general, state agency plans and actions "shall be consistent with the comprehensive plans of cities and counties." OAR 660-015-0000(2). However, a distinct statutory scheme sets out the specific powers and obligations of the council. Those powers include the authority to take an exception to any of the statewide planning goals when considering approving a proposed energy facility if the council deems such an exception justified. ORS 469.504(1)(b)(B), (C); ORS 469.504(2). Moreover, under ORS 469.504(6), the council is expressly exempted from ORS 197.180(b), which otherwise provides that state agencies shall "carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use *** [i]n a manner compatible with acknowledged comprehensive plans and land use regulations." Finally, ORS 469.504(7) provides that "each affected local government shall amend its comprehensive plan and land use regulations as necessary to reflect the decision of the council pertaining to a site certificate or amended site certificate." Thus, it is the local government's comprehensive plan that must ultimately conform to a council siting decision—not the other way around. Taken together, those statutes demonstrate that the legislature has devised a specific

---

[20] Goal 2 is "[t]o establish a land use planning process and policy framework as a basis for all decision[s] and actions related to use of land and to assure an adequate factual base for such decisions and actions." OAR 660-015-0000(2).

plan for the siting of energy facilities that controls over the more general requirements of Goal 2. Accordingly, we reject Umatilla County's argument that the council erred in concluding that the proposed facility "does otherwise comply with the applicable statewide planning goals."

## III.   CONCLUSION

To summarize, based on our analysis of the text, context, and legislative history of ORS 469.504(1)(b)(B) and (5), we conclude that the legislature intended ORS 469.504(1)(b)(B) to apply to track 2. In other words, we conclude that, in enacting ORS 469.504(1)(b)(B), the legislature intended to allow the council to evaluate a proposed facility that does not pass through more than three land use zones against a local government's applicable substantive criteria and to approve a site certificate for it even if the facility does not comply with all of the applicable substantive criteria, if it determines that the facility does otherwise comply with applicable statewide planning goals. Thus, we conclude that compliance with local land use regulations *is one way* for a facility to demonstrate compliance with statewide planning goals, but it is not the only way. If a facility does not comply with all applicable local land use criteria, then, under ORS 469.504(1)(b), compliance with the statewide planning goals themselves is also a sufficient basis for the council's approval of a site certificate.

The final order of the Energy Facility Siting Council is affirmed.